Walter L. "Bud" KAMB,
Referee, Plaintiff,

v.

UNITED STATES COAST GUARD, State
of California—California Highway Pa-
trol, County of Mendocino, City of Fort
Bragg, et al., Defendants.

No. C 93–3988–FMS.

United States District Court,
N.D. California.

Nov. 9, 1994.

Bruce C. Paltenghi, Gordon DeFraga Watrous & Pezzaglia, Martinez, CA, for plaintiff Walter "Bud" L. Kamb.

Peter D. Langley, Bruce C. Paltenghi, Gordon DeFraga Watrous & Pezzaglia, Martinez, CA, for plaintiffs Margaret Ann Ketchum, Henry E. Carey, Bernard M. Barron, Linda M. Barron, William R. Koepke, Ex'r of Estate of Teresa Carey Parks, Margaret D. Kraft, Kathleen D. Duckett, Barbara D. Inman, Kenneth V. Dawson, Jr., Wells Fargo Bank, Successor Trustee of Kathleen C. Dawson Family Trust and Successor Trustee of Maurice R. Carey Trust.

Jeanine B. Bauman, H. Peter Klein, County of Mendocino, Ukiah, CA, for defendant Mendocino County.

Thomas Lonergan, Fort Bragg, CA, for defendant Fort Bragg City.

Steven M. Talson, U.S. Dept. of Justice, Civ. Div., Torts Branch, Washington, DC, Michael J. Yamaguchi, U.S. Atty., U.S. Attys. Office, Civ. Div., San Francisco, CA, Naikang Tsao, U.S. Dept. of Justice, Environmental & Natural Resources Div., Environmental Defense Section, Washington, DC, for defendant U.S.

Tyler Pon, Deputy Atty. Gen., David W. Hamilton, CA State Atty. Gen. Office, San Francisco, CA, for defendant State of Cal.

## AMENDED ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, (2) DENYING MOTION FOR JUDGMENT ON THE PLEADINGS, AND (3) GRANTING LEAVE TO AMEND COMPLAINT

FERN M. SMITH, District Judge.

### Introduction

This is an action for recovery of clean up costs under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq. (hereinafter "CERCLA"), and for recovery of damages for negligence and waste under the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. On June 24, 1994, plaintiff filed a motion for summary judgment as to liability on the CERCLA

claim against defendants United States of America, the State of California, the County of Mendocino, and the City of Fort Bragg. Each of the these four defendants filed motions for summary adjudication of claims, partial summary judgment, and/or judgment on the pleadings with respect to the second and third claims for relief for negligence and waste. By letter dated July 21, 1994, plaintiff's counsel informed the Court that these motions of defendants are unopposed. The United States, in conjunction with its opposition to plaintiff's motion, filed what it termed as a motion for judgment on the pleadings, which challenges plaintiff's standing to pursue the CERCLA claim.

## Background

### A. Undisputed Facts

Plaintiff, Walter L. "Bud" Kamb, is a referee, duly appointed by the Mendocino County Superior Court in Action number CV61650 to sell three separate parcels of property on behalf of the owners of the property. The parcels are located east of Highway 1, approximately 1 mile north of the City of Fort Bragg in Mendocino County. One of the parcels is assessor's parcel number 069–251–X11, approximately eight (8) acres of which was formerly used as a rifle, gun, and trap range (hereinafter the "Site"), and was known as the "Fort Bragg Gun Club" or the "Noyo Gun Club".

During the marketing of the property, Trans Tech Consultants was hired to perform an analysis of the soils of the Site for potential contamination. The consultant's report, dated May 29, 1992, stated that the initial testing showed the presence of lead in the soil at the Site in the form of lead shot, bullets, pellets, and dust, and that some of these samples exceeded hazardous or regulatory threshold levels.

Following review of the Trans Tech report, the consulting firm of GeoSyntec of Walnut Creek, California, was hired to do follow up testing and evaluation of the Site. Richard A. Mitchell, a registered geologist and certi-

fied engineering geologist in the State of California, supervised the work.

The analysis of samples taken from the Site disclosed lead concentrations in near surface soil which exceeded total threshold limit concentrations (TTLC) and soluble threshold limit concentrations (STLC) of 1,000 ml/kg and 5.0 ml/L, respectively. Further, the results indicated that hazardous levels of lead appeared to be in the upper 6 inches to one foot of soil. Additionally, Mr. Mitchell observed lead in the form of spent shots and pellets on the Site. Finally, GeoSyntec has preliminarily estimated that the cost to cleanup the Site will be in the range of $122,000 to $630,000.

GeoSyntec has been paid $21,128.48 and Trans Tech has been paid $5,139.50 for the above described work; plaintiff Kamb has been paid $11,857.01 in fees for work in connection with responding to the identified contamination. These funds came from the proceeds of loans obtained by encumbrance of the owners' uncontaminated parcels, and contributions from owners of the property.

Employees of each defendant discharged firearms containing lead bullets on at least some portion of the Site[1] pursuant to a contract or agreement with the Fort Bragg Gun Club which, based on information developed to date, the parties believe leased the Site from Theresa Carey Parks.

## Discussion

### I. Defendant United States' Motion for Judgment on the Pleadings

#### A. Standing: Plaintiff Not Real Party In Interest

Along with its opposition to plaintiff's motion for summary judgment, the United States, on August 5, 1994, filed a "Motion for Judgment on the Pleadings". The Federal Rules make clear that dismissal of the action is not the proper remedy for the alleged defect. The issue raised by the United states is whether plaintiff, as a referee, has standing to sue in his own name on behalf of the owners of the property. Plaintiff was

---

1. It is in dispute as to where each defendant's employees shot on the Site and the intensity of their use.

granted authority to file this action on behalf of the owners by the Mendocino County Superior Court, pursuant to Cal.Code Civ.P. § 873.060. Section 873.060 pertains to the authority of referees appointed in actions to partition real property and provides as follows:

The referee may perform any acts necessary to exercise the authority conferred by this title, by order of the court.

While this statute provides authority for plaintiff to bring this lawsuit pursuant to court authorization, it does not specifically authorize the referee to bring the lawsuit in his own name for the benefit of the property owners. Fed.R.Civ.P. 17(a) provides in pertinent part:

... a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought.... [however,] [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17.

The Court finds that proper resolution of the objection of defendant United States is not to grant defendant's motion for judgment on the pleadings. Rather, the proper course is to allow an amendment of the complaint that substitutes the owners as proper plaintiffs and to dismiss Kamb as a party to this action.

## B. Standing: Plaintiff Has Not Incurred Response Costs

■ The United States next argues that this action should be dismissed because plaintiff Kamb has not incurred any response costs, a prerequisite to filing a cost recovery action under CERCLA. 42 U.S.C. 9607(a)(1–4)(B). Courts interpreting the term "incur" under CERCLA apply a plain meaning approach, and have required that private parties seeking recovery under CERCLA's cost recovery provisions show that they have personally incurred response costs. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir.1986); *McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39, 42–43 (6th Cir.1988); *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 608 F.Supp. 1272, 1275 (N.D.Cal.1985).

The United States notes that, in his declaration, Kamb stated that the $5,139.00 paid to Trans Tech Consultants was "raised by contributions from the owners." Kamb Decl. at 2, ¶ 4. Kamb also states that he "encumbered one of the two uncontaminated parcels as security for two loans [he has] obtained to finance the above activities." *Id.* at 3, ¶ 7. In other words, Kamb received the owners' permission to encumber one of their parcels of real property as security for two loans used to finance the payment of costs. Kamb then states that:

[i]n addition to paying the fees of [Gordon DeFraga, Watrous & Pezzaglia] and Geosyntec, funds I obtained from encumbering the property were used to pay my fees as a Referee for work in responding to lead contamination. This included cleaning brush from the Site, and performing contours of the target berms.

*Id.*, at 3, ¶ 9. These referee fees were paid directly to Kamb, and totaled close to $12,000 *Id.* at 4, ¶¶ 11, 12. Given that Kamb has already been reimbursed for these costs, it is unclear what costs he seeks to recover from defendants.

What does seem clear from Kamb's declaration is that the owners, not Kamb, are the parties that have incurred CERCLA response costs and have a personal stake in this litigation. Again, this is a pleading defect which can be easily cured by amending the complaint to substitute in the owners for Kamb.

## II. Plaintiff's Motion for Summary Judgment

### A. Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, de-

positions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (*quoting* Fed.R.Civ.P. 56(e) (emphasis added) and *citing Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: There must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

Rule 56(d) provides that the Court "shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy...." Fed. R.Civ.P. 56(d).

**B. Elements of Defendants' Liability On Which There is No Substantial Controversy**

Before plaintiff is entitled to summary judgment re liability, he must establish the following four elements:

(1) That the Site is a "facility" within the meaning of 42 U.S.C. § 9601(9);

(2) That there is a "release" or "threatened release" of a hazardous substance from the Site into the environment;

(3) That the release or threatened release of a hazardous substance has caused plaintiff to incur "response costs"; and

(4) That each defendant falls into one of the categories of "responsible parties" set forth in 42 U.S.C. § 9601.

*U.S. v. Alcan Aluminum Corporation,* 964 F.2d 252, 258–59 (3d Cir.1992). There is no dispute as to the first three of these elements, but there is a dispute whether plaintiff incurred response costs.

**1. No Dispute Re "Facility"**

■ Under CERCLA, the term "facility" is broadly defined as:

... (A) Any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located;

. . . .

42 U.S.C. § 9601(9):

The definition of "hazardous substance" is set forth in 42 U.S.C. § 9601(14), as:

... (A) any substance designated pursuant to § 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to § 9602 of this Title, (C) any hazardous waste having the characteristics identified under or listed pursuant to § 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C. § 9601 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed in § 1317(a) of Title 33, (E) any hazardous air pollutant listed under § 112 of the Clean Air Act [42 U.S.C. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to § 2606 of Title 15....

Under § 102 of CERCLA, 42 U.S.C. § 9602, the Administrator of the Environmental Protection Agency is authorized to

promulgate and revise regulations designating as hazardous, substances which when released into the environment may present a substantial danger to public health or welfare or the environment, and also to promulgate regulations establishing the reportable threshold with respect to any hazardous substance. 42 U.S.C. § 9601(2) and 42 U.S.C. § 9602(A).

Regulations promulgated pursuant to § 102 are found in 40 C.F.R. § 302. Under § 302.4, lead is listed as a hazardous substance with a reportable quantity of one pound. Further, the footnote at the end of the table of hazardous substances in § 302.4 states that the statutory source for designation of lead as a hazardous substance is § 307(a) of the Clean Water Act. 33 U.S.C. § 1321(b)(2)(A). Finally, § 302.6 defines a reportable quantity as that amount required to be reported to the National Response Center under the National Contingency Plan for implementation of CERCLA.

The declarations of Richard A. Mitchell, Eric B. Tjensvold, and Larry Klein show that sampling done at the Site disclosed the presence of lead in the soil in concentrations more than sufficient to be classified as hazardous. Based on this evidence, it is indisputable that a hazardous substance which meets the statutory definition has come to be located at the Site, thus classifying it as a "facility" under CERCLA.

## 2. No Dispute Re: Release or Threatened Release

■ Under CERCLA, a release is defined as " . . . any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substances or pollutant or contaminant), . . . ." 42 U.S.C. § 9601(22). Consistent with the remedial intent of CERCLA, this statute has been read broadly. *See e.g., Hatco Corporation v. W.R. Grace & Co.*, 801 F.Supp. 1309 (D.N.J.1992); *Amland Properties Corporation v. Aluminum Company of America*, 711 F.Supp. 784, 793 (D.N.J.1989).

The declarations of Richard A. Mitchell, Eric B. Tjensvold, and Larry Klein show that lead, a hazardous substance, has been released into the environment at the Site within the definition of CERCLA. The declarations show:

1. There were spent bullet casings, shotgun shell casings, bullets, pellets, and what appeared to be lead fragments;

2. Analysis of samples taken from the Site revealed lead concentrations 6 inches to 1 foot in the soil, which exceeded TTLC and STLC limits of 1,000 mg/kg and 5.0 ml/L, respectively;

3. Analysis of further soil samples revealed lead concentrations as high as 28,000 mg/kg.

Based on these results, it is indisputable that there has been a release of a hazardous substance into the environment at the Site under CERCLA.

## 3. Defendants Are "Responsible Parties"

■ 42 U.S.C. § 9607 sets forth four categories of persons liable for response costs under CERCLA. These include past and present owners and operators of a facility, § 9607(a)(1) & (a)(2), persons who accept or accepted hazardous substances for transport to disposal or treatment facilities, § 9607(a)(4), and "any person who by contract agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another part or entity and containing such hazardous substances, . . . ." 42 U.S.C. § 9607(a)(3).

Defendants United States, the State of California, the County of Mendocino, and the City of Fort Bragg each have admitted that its personnel discharged firearms containing lead bullets at the Site, thereby contributing, to some extent, to the contamination. No defendant has disputed that documents disclosed by the parties, or disclosed to them, establish directly or circumstantially that the personnel of each party shot on this Site pursuant to contact or agreement. See Memorandum of Points and Authorities in

Support of Motion for Summary Judgment, at 13–15.

## C. Elements of Defendants' Liability On Which There Are Disputes of Material Fact

### 1. Dispute Re: Response Costs Incurred

■ While plaintiff has shown that Geosyntec and Trans Tech have been paid $21,-128.48 and $5,139.50, respectively, as noted in the Court's discussion of plaintiff's standing to bring this action, it appears that the owners, and not plaintiff, incurred these costs. Indeed, plaintiff has been paid $11,857.01 for work in responding to the identified contamination. Accordingly, a dispute of material fact exists as to whether plaintiff has incurred response costs.

### 2. Apportionment of CERCLA Liability

■ There is a reasonable basis for apportioning CERCLA liability based on the volume of lead each contributed to the Site and based on the divisibility of the Site into two discrete sections: a trap/skeet range, not used by the defendants, and a firing range. As a result, joint and several liability should not be imposed upon defendants. The parties also agree that the proper framework for addressing this issue is set forth in *In re Bell Petroleum Servs., Inc.*, 3 F.3d 889 (5th Cir. 1993). This is not an appropriate case for joint and several liability, and the final determination of each parties' pro rata share of the response costs must be deferred.

■ The United States also requests that the Court reserve making any determination as to the scope of its CERCLA liability until the property owners' liability is resolved. If the owners are liable under section 107, then *In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir.1991), dictates that this action is a contribution action, with each responsible party, including the owners, bearing its allocable share.

Section § 9613(f) provides that "*[a]ny* person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a)." 42 U.S.C. § 9613(f) (emphasis added). Furthermore, "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.* Section 9613(f), therefore, empowers this Court to allocate response costs among defendants, the owners, and any additional parties found to have deposited lead on the property. Because the owners may be liable for a portion of the response costs, it would be improper, indeed impossible, for the Court to determine defendants' liability at this time.

### Conclusion

The motion of plaintiff for summary judgment is DENIED; however, the Court finds, pursuant to Fed.R.Civ.P. 56(d), that the following material facts exist without substantial controversy:

1. That the former shooting range of the Parks Estate Property, described in paragraph 2 of the Joint Statement of Undisputed facts, is a "facility" within the meaning of 42 U.S.C. § 9601(9).

2. That there has been a "release" or "threatened release" of a hazardous substance from the Site into the environment.

3. That each defendant is a "responsible party" under 42 U.S.C. § 9607(a)(3), as a person who by contract or agreement arranged for disposal of hazardous substances on the Site.

The motion of defendant United States for judgment on the pleadings is DENIED. Plaintiff is granted leave to amend his complaint, within ten (10) days of this order, by substituting in the property owners. Upon such substitution, plaintiff Kamb is DISMISSED as a party to this action.

The Court GRANTS defendants' unopposed motions for summary judgment with respect to claims two and three.

SO ORDERED.