1998 ND 116

### In the Matter of the ESTATE OF Wallace W. ZIMMERMAN, deceased.

**Sarah L. ZIMMERMAN, Surviving Spouse of Wallace W. Zimmerman, and Maureen K. Zimmerman, Daughter and Residuary Devisee of Wallace W. Zimmerman, Petitioners and Appellants,**

v.

**Andrew C. ZIMMERMAN, Personal Representative of the Estate of Wallace W. Zimmerman, Deceased, Respondent and Appellee.**

Civil No. 970271.

Supreme Court of North Dakota.

June 4, 1998.

Steven E. McCullough (argued), of Ohnstad Twichell, West Fargo, for petitioners and appellants.

Edmund G. Vinje II (argued), of Vinje Law Office, Fargo, for respondent and appellee.

MESCHKE, Justice.

[¶ 1] Sarah L. Zimmerman and Maureen K. Zimmerman appealed a probate court judgment and orders rejecting Sarah's attempt to claim an elective share in the augmented estate of her deceased spouse, Wallace W. Zimmerman. We conclude the trial court erred in ruling Sarah effectively waived her right to a statutory elective share, and erred in ordering Wallace's will unambiguously devised Sarah nothing. We reverse and remand for determination of Sarah's elective share of the augmented estate.

·I

[¶ 2] Wallace and Sarah were married on April 24, 1954. Three children were born of the marriage: Maureen, Karen, and Andrew. Through most of this marriage, Wallace and Sarah got along well together. But in 1980, Wallace became verbally abusive, and later physically abusive, to Sarah.

[¶ 3] In early 1981, Sarah sued for legal separation from Wallace. Wallace counterclaimed for divorce, and in March 1982, the couple legally divorced. The divorce court valued the parties' marital assets at $767,366 and the marital debt at $53,000, leaving a net marital estate of $714,366. The court divided the property nearly equally, awarding Sarah the home and its furnishings, Wallace's interest in another house, and a vehicle. The court also ordered Wallace to pay Sarah $1,000 per month for 20 years as part of the property distribution, with the debt secured by a mortgage on Stutsman County farmland gifted to Wallace by his parents.

[¶ 4] Wallace had served in the military but, under the law at the time, Wallace's military retirement pay was not taken into account by the divorce court in dividing the property. The divorce court specifically refused to consider "the future projected value of the military [retirement] pay of [Wallace] as a marital asset."

[¶ 5] Almost three years later, Sarah learned about a change in federal law that permitted allocation of military retirement benefits between spouses at a divorce, see, e.g., *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984), and moved to reopen the divorce decree so Wallace's military retirement benefits could be considered in the property division. At the time Sarah made the motion, she was told the court might reopen the entire property distribution. Sarah and Wallace then began discussing the possibility of remarrying each other, and they did so.

[¶ 6] Before they remarried, however, Wallace and Sarah entered into a "Pre–Nuptial Agreement" on March 19, 1985. The attorney who represented Sarah in the divorce action drafted the prenuptial agreement. The agreement specifically referred to their earlier marriage and divorce, the motion pending to reopen the divorce case to determine Sarah's share of Wallace's military retirement benefits, and agreed "each party is the owner of certain real and personal property, the nature and extent of which has been fully disclosed by each to the other." The agreement said "both parties desire to define the interest which each shall have in the estate of the other during marriage or in the

event they should in the future live separately from one another or become divorced." The agreement said:

1. The parties agree that upon their remarriage the military retirement pay of [Wallace] shall be considered a marital asset to be considered by the Court in the event of any future separation or divorce.

2. Both parties agree that property owned by them separately at this time, with the exception of the military retirement pay described above, shall remain their separate property in the event of their remarriage and shall further remain their separate property in the event of their divorce or separation.

3. Both parties stipulate and agree that any property acquired after their marriage and the question of spousal support, if any, will be settled by the parties or by the court in the event of a future separation or divorce.

The parties stipulated for the dismissal of the motion to reopen the divorce decree, and specified "[t]his Agreement shall come into effect only upon the solemnization of the marriage between the parties and shall then bind the parties and the respective heirs, executors and administrators."

[¶ 7] After Wallace and Sarah remarried, on March 27, 1985, they lived together nearly nine months before they again experienced problems in their relationship. On May 30, 1986, Wallace and Sarah informally separated and lived apart from each other thereafter.

[¶ 8] On August 6, 1986, Wallace executed his last will and testament. In the will, Wallace devised all of his property to his three "children, share and share alike, per stirpes." That devise, however, was subject to the following paragraph:

I am presently married and separated, contemplating divorce. I hereby leave my wife the legal minimum required by law. When we are legally divorced, I understand that the legal minimum is zero and it is my intention that if we are not husband and wife at the time of my demise my present wife, Sarah Lily Zimmerman, shall receive nothing from my estate.

Although they never lived together again, neither Wallace nor Sarah sought a legal separation or divorce. Neither spouse ever sought to settle spousal support or to divide property acquired after the marriage. Wallace continued to pay Sarah, even after their remarriage, the $1,000 per month for the property distribution in the divorce decree. The mortgage on the home set aside to Sarah in the divorce decree, and where she lived after the divorce and during their separation, was also paid off by Wallace.

[¶ 9] Wallace died on January 1, 1994, and his son, Andrew C. Zimmerman, was appointed personal representative of the estate. In June 1994, Sarah gave notice of her intent to seek an elective share in the augmented estate under NDCC Ch. 30.1–05, and moved for a determination of her right to do so. The personal representative resisted the motion.

[¶ 10] After an evidentiary hearing on only the elective share, the probate court rejected Sarah's claim to an elective share. The court ruled the language in the prenuptial agreement between Sarah and Wallace was ambiguous but, based on his assessment of other evidence at the hearing, found "Sarah waived, after fair disclosure, all of her rights in the property or estate of Wallace ... which is a waiver of all rights of Sarah as surviving spouse to an elective share, homestead allowance, exempt property, and family allowance by her in the property of Wallace."

[¶ 11] Sarah and her daughter, Maureen, as a residuary devisee, appealed to this Court. We dismissed that appeal for lack of finality because the separate dispute about whether Wallace had devised Sarah the equivalent of an elective share in the will had not been resolved. See Matter of Estate of Zimmerman, 1997 ND 58, 561 N.W.2d 642. The personal representative then moved for summary judgment, arguing Sarah was entitled to nothing under Wallace's will either. The court granted summary judgment to the estate, ruling as a matter of law Wallace's will unambiguously "gives nothing to Sarah." Sarah and Maureen (collectively Sarah) appealed.

## II

[¶ 12] Sarah argues the probate court erred in ruling the prenuptial agreement validly waived her right to an elective share of the augmented estate, and in summarily dismissing her claim for the equivalent of an elective share under the will.

### A

[¶ 13] A prenuptial agreement is a contract, *see Affiliated Banc Group, Ltd. v. Zehringer,* 527 N.W.2d 585, 587 (Minn.Ct. App.1995), and its interpretation is primarily a question of law for the court to decide. *See Binder v. Binder,* 557 N.W.2d 738, 741 (N.D. 1996). Only if the written agreement is ambiguous, or if it does not reflect the spouses' intent because of fraud, mistake, or accident, can a court employ parol evidence to clarify the terms of the contract, or to find the intent of the parties. *See Pear v. Grand Forks Motel Associates,* 553 N.W.2d 774, 779 (N.D.1996). Resolution of an ambiguity in a contract by extrinsic evidence is a finding of fact subject to review under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *See Matter of Estate of Brown,* 1997 ND 11, ¶ 15, 559 N.W.2d 818. As we said in *Matter of Estate of Opatz,* 554 N.W.2d 813, 815 (N.D. 1996), the application and interpretation of

the Uniform Probate Code statutes are also questions of law fully reviewable on appeal.

[¶ 14] A surviving spouse's right to elect a share of the augmented estate is a creation of statute, separate and distinct from any rights under a will. *See Cranston v. Winters,* 238 N.W.2d 647, 652–653 (N.D. 1976). The goal of an elective share of the augmented estate is to protect the surviving spouse from deprivation or destitution by disinheritance. *See Matter of Estate of Luken,* 551 N.W.2d 794, 797 (N.D.1996). Consequently, the right of a surviving spouse to statutory allowances is strongly favored under the law. *See Estate of Smith,* 674 P.2d 972, 973 (Colo.Ct.App.1983). The augmented estate generally consists of not only the decedent's net probate estate, and the decedent's gratuitous transfers to donees other than the surviving spouse, but also includes the value of the surviving spouse's property owned at the decedent's death and the value of property transferred by the surviving spouse to donees other than the decedent, to the extent the surviving spouse's owned and transferred property was derived from the decedent.[1] NDCC 30.1–05–02 (1993) (UPC 2–202). *See also Luken* (quoting S. Kurtz, *The Augmented Estate Concept Under the Uniform Probate Code: In Search of an Equitable*

---

1. In a reply brief on the motion for determination of the right to an elective share, Sarah's attorney presented the following "rough calculation" of Sarah's elective share:

PROBATE ESTATE:

| | |
|---|---|
| Real Estate | $392,100.00 |
| Mineral Rights | 160.00 |
| Contract for Deed Property | 32,488.42 |
| Vehicles | 34,900.00 |
| Insurance Payable to Estate | 37,276.81 |
| Solely–Owned Bank Accounts | 998.49 |
| Collectibles, Guns, Golf Carts Trailers, Coins, and Silver | 69,582.84 |
| Probate Property Not on Inventory i.e., refunds and social security check, etc.) | 6,825.94 |
| | |
| TOTAL PROBATE PROPERTY: | $574,332.50 |
| | |
| MINUS: | |
| | |
| Funeral Expenses | $ 11,437.06 |
| Expenses of Administration | 9,514.54 |
| Exempt Property | 5,000.00 |

| | |
|---|---|
| Enforceable Claims | 158,047.29 |
| Net Assets Applicable to Augmented Estate | 390,333.61 |
| Transfers to Third–Party Multiple Accounts | 8,033.52 |
| | |
| GRAND TOTAL OF ASSETS INCLUDED IN AUGMENTED ESTATE: | $398,367.13 |
| | |
| SURVIVING SPOUSE ONE–THIRD ELECTIVE SHARE | $132,789.04 |

As we noted in *Estate of Zimmerman,* 1997 ND 58, ¶ 7, 561 N.W.2d 642, this augmented estate computation does not appear to list the value of property owned by Sarah at Wallace's death, including nearly $357,000 Sarah received for her one-half share of the property distribution from the 1982 divorce decree. *See* NDCC 30.1–05–02 (1993) (UPC 2–202). On appeal, Sarah asserted, without elaboration, her share of the property distribution was not properly includable in the augmented estate calculation. Whether Sarah's calculation of the augmented estate is correct is not an issue in this appeal, and therefore we do not decide it.

*Elective Share,* 62 Iowa L.Rev. 981, 1012 (1977)). Still, as we noted in *Matter of Estate of Lutz,* 1997 ND 82, ¶ 51, 563 N.W.2d 90, the Probate Code allows a surviving spouse to waive her right to an elective share in a valid, enforceable and conscionable premarital agreement that will prevent her from receiving anything from the estate other than express gifts in the will.

■ [¶ 15] The probate court relied on the Probate Code in ruling Sarah had waived her right to an elective share. The applicable version of NDCC 30.1–05–04 (1993) (UPC 2–204) said: [2]

> *Waiver of right to elect and of other rights.*—The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of "all rights" or equivalent language in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead allowance, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement.

Here, the probate court ruled Sarah was Wallace's surviving spouse and their second marriage established her right to an elective share. The court went on, however, to rule Sarah had waived her right to an elective share.

[¶ 16] Under the statute, a valid waiver must meet three formal requirements: (1) it must be in the form of a written agreement; (2) it must be signed by the spouse waiving the right; and (3) there must have been a fair disclosure. *See Ruzic v. Ruzic,* 549 So.2d 72, 74 (Ala.1989); *Matter of Estate of Beaman,* 119 Ariz. 614, 583 P.2d 270, 273 (Ct.App.1978). The statute describes only two types of written agreements that will waive a surviving spouse's right to an elective share: (1) the agreement must contain "a waiver of 'all rights' or equivalent language in the property or estate of a present or prospective spouse"; or (2) the agreement must contain "a complete property settlement entered into after or in anticipation of separation or divorce." The prenuptial agreement between Sarah and Wallace meets neither of these requirements.

[¶ 17] Case law interpreting the identical Uniform Probate Code section has required clear and specific waiver language on the face of the document to be valid, and courts "cannot find a waiver by presumption or assumption, or by construction of the written agreement." *Estate of Smith,* 674 P.2d at 973. The agreement must either expressly state the surviving spouse waives all rights, *see Hulsh v. Hulsh,* 431 So.2d 658, 662 (Fla. Ct.App.1983); or waives rights to the survivor's statutory allowance, *see Estate of Calcutt v. Calcutt,* 576 N.E.2d 1288, 1292 (Ind.Ct. App.1991); or waives a claim to the estate of the other spouse, *see Estate of Thrasher,* 651 S.W.2d 562, 563 (Mo.Ct.App.1983); or at least waives their rights if one of the spouses dies before the marriage is dissolved. *See Hempe v. Hempe,* 54 Or.App. 490, 635 P.2d 403, 404 (1981). *See also In re Marriage of Dow,* 230 Mont. 416, 750 P.2d 1064, 1065 (1988) (example of a clear waiver of all rights). In this case, the agreement contains no specific language declaring Sarah waived

---

2. The Legislature amended the elective share sections of the Probate Code in 1993, but these changes did not become effective until August 1, 1995. *See* 1993 N.D. Laws Ch. 334, § 51. Our statutory references in this opinion are to the statutes in existence before the effective date of the 1993 amendments.

At the time pertinent to this case, a surviving spouse had the right to elect a one-third share of

the augmented estate. *See* NDCC 30.1–05–01(1) (1993) (UPC 2–201). The 1993 amendments changed the one-third share to a share computed according to the number of years of the marriage. *See* 1993 N.D. Laws Ch. 334, § 15. In 1995 the Legislature again changed the amount of the share to one-half of the augmented estate. *See* 1995 N.D. Laws Ch. 322, § 3.

any rights she may have as the result of Wallace's death.

▆ [¶ 18] Rather, the operative clauses of this prenuptial agreement clearly demonstrate it did not deal with the rights of the spouses upon death, but only dealt with "the interest which each shall have in the estate of the other *during marriage or in the event they should in the future live separately from one another or become divorced.*" (Emphasis added). Marriage is terminated only by death or divorce. *Thorson v. Thorson,* 541 N.W.2d 692, 695 (N.D.1996). For a valid waiver under the statute, it was essential that the agreement mention rights upon Wallace's death. *See Goodwin v. Goodwin,* 592 So.2d 212, 215 (Ala.1991); *Matter of Estate of Beesley,* 883 P.2d 1343, 1350 (Utah 1994). This prenuptial agreement did not waive "all rights" to the elective share, nor did it contain any equivalent language to that effect.

▆ [¶ 19] We cannot accept the estate's argument the prenuptial agreement is a complete property settlement entered into after or in anticipation of separation or divorce. As the court explained in *Matter of Estate of Morrell,* 687 P.2d 1319, 1323 (Colo.Ct.App. 1984), for a "complete property settlement" under the Uniform Probate Code waiver section, the settlement must dispose of every item of property owned by the spouses at the time of execution. This prenuptial agreement between Sarah and Wallace did not dispose of all of their property at the time of its execution. Indeed, specific aspects of property disposition were explicitly left unresolved in the prenuptial agreement.

[¶ 20] The third operative paragraph of the agreement said any property settlement for property acquired after marriage "will be settled by the parties or by the court." The first operative paragraph similarly said Wallace's military retirement pay "shall be considered a marital asset to be considered by the Court in the event of any future separation or divorce." *See generally Clooten v. Clooten,* 520 N.W.2d 843, 848–849 (N.D.1994) (an agreement to agree in the future lacks essential terms and is insufficient to support an enforceable contract or to invoke promissory estoppel). This prenuptial agreement

left disposition of much of their property for future consideration.

▆ [¶ 21] To the extent the trial court may have believed these spouses' physical separation was sufficient to waive the elective share under the law, we conclude their physical separation alone was insufficient to accomplish waiver under NDCC 30.1–05–04 (1993) (UPC 2–204). The comments to the Uniform Probate Code are helpful in interpreting the meaning of those code sections in North Dakota. *See Estate of Opatz,* 554 N.W.2d at 815. The Editorial Board Comment to NDCC 30.1–10–02 (1993) (UPC 2–802), spoke to the effect of divorce, annulment, and decree of separation:

> Where there is only a legal separation, rather than a divorce, succession patterns are not affected; but if the separation is accompanied by a complete property settlement, this may operate under section 30.1–05–04 as a renunciation of benefits under a prior will and by intestate succession.

*Compare Matter of Estate of Kueber,* 390 N.W.2d 22, 24 (Minn.Ct.App.1986) (neither common law marriages nor common law divorces are recognized under the probate code). The physical separation of these spouses, without a divorce or legal separation, was clearly insufficient to divest Sarah of her elective right.

▆ [¶ 22] The estate raises numerous arguments in an attempt to justify the probate court's waiver theory despite the lack of a valid waiver under NDCC 30.1–05–04 (1993) (UPC 2–204). The estate asserts Sarah has waived by her conduct any right to the elective share, Sarah is estopped from claiming it and, because Sarah accepted the benefits of the prenuptial agreement, she may not now repudiate it. All of these arguments are essentially based on the principal assertion it would be inequitable, unjust and unfair for Sarah to have received nearly half of the marital property in the divorce, as well as military benefits, and now to get an elective share in the balance of Wallace's estate.

[¶ 23] The probate court clearly based its decision on NDCC 30.1–05–04 (1993) (UPC

2–204), and not on any of the alternative theories argued on appeal by the estate. But more important, even assuming NDCC 30.1–05–04 (1993) (UPC 2–204) might not be the exclusive method for waiving the right to an elective share, *see, e.g., Matter of Estate of Burshiem,* 483 N.W.2d 175, 177 n. 1 (N.D. 1992) (surviving spouse feloniously kills decedent not entitled to inherit), none of Sarah's alleged inequitable conduct adds up to a waiver. Sarah and Wallace were validly remarried, and Sarah is now his surviving spouse under the law. These circumstances legally confer specific rights on Sarah that she may elect to exercise under the Probate Code. Simply because the estate believes Sarah has already received a fair share of Wallace's assets does not make her conduct the equivalent of a waiver of the right to an elective share. The estate's arguments Sarah will be unjustly enriched, if allowed an elective share, are without merit.

[¶ 24] We conclude the trial court erred as a matter of law in ruling Sarah effectively waived her elective share right under NDCC 30.1–05–04 (1993) (UPC 2–204).[3]

## B

[¶ 25] Summary judgment is an expedited procedure for the prompt disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Global Financial Serv. v. Duttenhefner,* 1998 ND 53, ¶ 5, 575 N.W.2d 667. As we said in *Hovland v. City of Grand Forks,* 1997 ND 95, ¶ 5, 563 N.W.2d 384, in reviewing whether the trial court properly granted summary judgment, we view the evidence in the light most favorable to the non-moving party.

[¶ 26] Wallace's will directed:

I am presently married and separated, contemplating divorce. *I hereby leave my wife the legal minimum required by law.* When we are legally divorced, I understand that the legal minimum is zero and it

is my intention that if we are not husband and wife at the time of my demise my present wife, Sarah Lily Zimmerman, shall receive nothing from my estate.

(Emphasis added). Inexplicably, the probate court ruled this provision unambiguously meant Sarah would receive nothing under the will.

[¶ 27] Sarah reasonably argues this language does not mean Wallace intended to disinherit Sarah as long as they were married because the "legal minimum required by law" is the elective share under NDCC Ch. 30.1–05. We agree.

[¶ 28] Wallace and Sarah were still married when he died. His will unambiguously left Sarah "the legal minimum required by law." The legal minimum that a spouse is entitled to take from a decedent's estate is the elective share under NDCC Ch. 30.1–05. Since we have already concluded Sarah has not waived an elective share, we reverse the probate court's summary judgment that Sarah was entitled to nothing under Wallace's will.

## III

[¶ 29] The judgment and orders are reversed and the case remanded for determination of Sarah's elective share of the augmented estate. Sarah's request that the case be remanded to a different trial judge to be assigned by the presiding judge of the district is denied.

[¶ 30] VANDE WALLE, C.J., SANDSTROM, NEUMANN and MARING, JJ., concur.

---

3. Because we have concluded there was no effective waiver, it is unnecessary to address whether the trial court correctly found the additional requirement of fair disclosure had been satisfied.