2001 ND 155

In the Matter of the ESTATE OF
Wallace W. ZIMMERMAN,
Deceased.

Sarah L. Zimmerman, Surviving Spouse
of Wallace W. Zimmerman, and Mau-
reen K. Zimmerman, Daughter and
Residuary Devisee of Wallace W. Zim-
merman, Petitioners and Appellees,

v.

Andrew C. Zimmerman, Personal Repre-
sentative of the Estate of Wallace W.
Zimmerman, Deceased, Respondent
and Appellant.

In the Matter of the Estate of Wallace
W. Zimmerman, Deceased.

Sarah L. Zimmerman, Surviving Spouse
of Wallace W. Zimmerman, and Mau-
reen K. Zimmerman, Daughter and
Residuary Devisee of Wallace W. Zim-
merman, Petitioners and Appellants,

v.

Andrew C. Zimmerman, Personal Repre-
sentative of the Estate of Wallace W.
Zimmerman, Deceased, Respondent
and Appellee.

Nos. 20000361, 20010002.

Supreme Court of North Dakota.

Aug. 30, 2001.

Robert G. Hoy (argued) and Steven E. McCullough (on brief), Ohnstad Twichell, P.C., West Fargo, ND, for petitioners, appellees, and appellants.

Edmund G. Vinje II, Vinje Law Office, Fargo, ND, for respondent, appellant, and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Andrew Zimmerman, the personal representative of Wallace Zimmerman's estate, appealed a probate court order excluding Sarah Zimmerman's property from Wallace's augmented estate for purposes of calculating her elective share of his augmented estate. Sarah and Maureen Zimmerman appealed a probate court order allowing the personal representative attorneys' fees and refusing to award Sarah interest on her elective share. We reverse the court's decision excluding Sarah's property from Wallace's augmented estate, and we affirm the decision allowing the personal representative attorneys' fees.

I

[¶ 2] In *Matter of Estate of Zimmerman,* 1998 ND 116, 579 N.W.2d 591, we outlined the factual background regarding Sarah's claim for an elective share of Wallace's augmented estate. Wallace and Sarah were married in April 1954, and they had three children during their marriage: Maureen, Karen, and Andrew. Wallace and Sarah were divorced in 1982. The divorce court distributed the couple's marital estate, awarding Sarah property valued at about $357,000. However, the divorce court refused to include Wallace's military retirement benefits in the couple's marital estate.

[¶ 3] Sarah subsequently learned she had a claim against Wallace's military retirement benefits, and she moved to reopen the divorce decree so those benefits could be considered in the property division. However, Sarah withdrew her motion when she remarried Wallace in March 1985. Before Wallace and Sarah remarried, they entered into a March 1985 prenuptial agreement, which provided:

1. The parties agree that upon their remarriage the military retirement pay of [Wallace] shall be considered

a marital asset to be considered by the Court in the event of any future separation or divorce.

2. Both parties agree that property owned by them separately at this time, with the exception of the military retirement pay described above, shall remain their separate property in the event of their remarriage and shall further remain their separate property in the event of their divorce or separation.

3. Both parties stipulate and agree that any property acquired after their marriage and the question of spousal support, if any, will be settled by the parties or by the court in the event of a future separation or divorce.

[¶ 4] After their remarriage, Wallace and Sarah again experienced marital problems. In May 1986, they informally separated and thereafter lived apart from each other. Although they never lived together again, neither Wallace nor Sarah sought a legal separation or divorce.

[¶ 5] In August 1986, Wallace executed his final will, designating Andrew Zimmerman as personal representative of his estate and devising his property to his three "children, share and share alike, per stirpes," subject to the following provision:

I am presently married and separated, contemplating divorce. I hereby leave my wife the legal minimum required by law. When we are legally divorced, I understand that the legal minimum is zero and it is my intention that if we are not husband and wife at the time of my demise my present wife, Sarah Lily Zimmerman, shall receive nothing from my estate.

[¶ 6] Wallace died on January 1, 1994, and the probate court appointed Andrew personal representative of the estate. Rather than taking under Wallace's will, Sarah petitioned for an elective share of his augmented estate under N.D.C.C. ch. 30.1–05. The probate court initially rejected Sarah's claim for an elective share, ruling the prenuptial agreement waived all of her rights in Wallace's estate.

[¶ 7] In *Zimmerman*, 1998 ND 116, ¶¶ 24, 28, 579 N.W.2d 591, we concluded the prenuptial agreement was not a waiver of Sarah's right to an elective share of Wallace's augmented estate, and the probate court erred in deciding she was entitled to nothing under Wallace's will. We remanded for determination of Sarah's elective share. *Id.* at ¶ 29.

[¶ 8] On remand, Sarah argued the property distributed to her in the 1982 divorce should not be included in Wallace's augmented estate. She claimed that, after excluding her property, Wallace's augmented estate was about $400,000 and her one-third elective share was about $133,000. The personal representative argued the property distributed to Sarah in the 1982 divorce should be included in Wallace's augmented estate. The personal representative claimed Sarah was not entitled to any additional property from Wallace's estate to satisfy her elective share because, with the property distributed to her in the divorce, she had already received more than one-third of Wallace's augmented estate. The probate court excluded from Wallace's augmented estate the property distributed to Sarah in the 1982 divorce. The court said the property distribution in the divorce was not a transfer of Wallace's property to Sarah, but rather was a distribution of the marital estate of the parties. The court concluded the property distributed to Sarah was not " 'derived' from Wallace, but if it was so derived, Sarah, by virtue of the distribution in the divorce is deemed to have given money's worth for that property" under N.D.C.C. § 30.1–05–02. The probate court also allowed the personal representative

attorneys' fees and denied Sarah's request for interest on her elective share.

## II

■ [¶ 9] The personal representative argues the probate court erred in excluding from Wallace's augmented estate property distributed to Sarah in the 1982 divorce. The personal representative argues the property was derived from Wallace without a full consideration in money or money's worth under N.D.C.C. § 30.1–05–02(2). Sarah responds the distribution of property to her in the divorce was for full consideration in money or money's worth under N.D.C.C. § 30.1–05–02(2), because her share of the property distribution was in recognition of her contribution to the marriage.

[¶ 10] Chapter 30.1–05, N.D.C.C., was repealed effective January 1, 1996, and replaced by a new N.D.C.C. ch. 30.1–05. *See* 1995 N.D. Sess. Laws ch. 322, § 27 and 1993 N.D. Sess. Laws ch. 334, §§ 50 and 51. The current provisions of N.D.C.C. ch. 30.1–05 permit a surviving spouse to take an elective share of one-half of the decedent's augmented estate. The former N.D.C.C. ch. 30.1–05 applies to this case, and all references to N.D.C.C. ch. 30.1–05 in this opinion refer to former N.D.C.C. ch. 30.1–05.

■ [¶ 11] Under the version of N.D.C.C. ch. 30.1–05 in effect when Wallace died on January 1, 1994, the surviving spouse of a married person domiciled in this state had the right to take an elective share of one-third of the decedent's augmented estate. Under that law, the decedent's augmented estate consisted of the decedent's net probate estate plus (1) the value of property transferred by the decedent during the marriage to any person other than the surviving spouse to the extent the decedent did not receive adequate and full consideration in money or money's worth for the transfer, and (2) the value of property owned by the surviving spouse at the decedent's death to the extent that property was derived from the decedent by any means other than testate or intestate succession without a full consideration in money or money's worth. N.D.C.C. § 30.1–05–02.[1] *See Matter of Estate of Luken*, 551 N.W.2d 794, 797 (N.D. 1996). *See generally* Sheldon F. Kurtz, *The Augmented Estate Concept Under the Uniform Probate Code: In Search of an*

---

**1.** Section 30.1–05–02, N.D.C.C., defined the augmented estate, in relevant part:

> The augmented estate means the estate reduced by funeral and administration expenses, homestead as defined in section 47–18–01, family allowances and exemptions, and enforceable claims, to which is added the sum of the following amounts:
>
> 1. The value of property transferred by the decedent at any time during marriage, to or for the benefit of any person other than the surviving spouse, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:
>
> . . . .
>
> 2. The value of property *owned by the surviving spouse at the decedent's death*, plus the value of property transferred by the spouse

at any time during marriage to any person other than the decedent which would have been includable in the spouse's augmented estate if the surviving spouse had predeceased the decedent, *to the extent the owned or transferred property is derived from the decedent by any means other than testate or intestate succession without a full consideration in money or money's worth.* For purposes of this subsection:

. . . .

c. *Property owned by the surviving spouse as of the decedent's death,* or previously transferred by the surviving spouse, *is presumed to have been derived from the decedent except to the extent that the surviving spouse establishes that it was derived from another source.*

(emphasis added).

*Equitable Elective Share,* 62 Iowa L.Rev. 981, 1012 (1977). Under N.D.C.C. § 30.1–05–02(2)(c), property owned by the surviving spouse at the decedent's death is presumed to have been derived from the decedent except to the extent the surviving spouse establishes it was derived from another source. To rebut the presumption, the surviving spouse must show the extent to which his or her property was derived from sources other than the deceased spouse. *Luken,* at 798.

[¶ 12] Section 30.1–05–02, N.D.C.C. is derived from Uniform Probate Code § 2–202, and the Editorial Board Comment to that section explains the purposes of augmenting a probate estate and the two categories of property that are added to the probate estate to compute the augmented estate:

> The purpose of the concept of augmenting the probate estate in computing the elective share is twofold: 1. to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share, and 2. to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets, and other nonprobate arrangements. Thus essentially two separate groups of property are added to the net probate estate to arrive at the augmented net estate which is the basis for computing the one-third share of the surviving spouse. In the first category are transfers by the decedent during his lifetime [to persons other than the surviving spouse] which are essentially will substitutes, arrangements which give him continued benefits or controls over the property. However, only transfers during the marriage are included in this category. . . .

> In the second category of assets, property of the surviving spouse derived from the decedent and property derived from the decedent which the spouse has, in turn, given away in a transaction that is will-like in effect or purpose, the scope is much broader. Thus a person can during his lifetime make outright gifts to relatives and they are not included in this first category unless they are made within two years of death (the exception being designed to prevent a person from depleting his estate in contemplation of death). But the time when the surviving spouse derives her wealth from the decedent is immaterial; thus if a husband has purchased a home in the wife's name and made systematic gifts to the wife over many years, the home and accumulated wealth she owns at his death as a result of such gifts ought to, and under this section do, reduce her share of the augmented estate. Likewise, for policy reasons life insurance is not included in the first category of transfers to other persons, because it is not ordinarily purchased as a way of depleting the probate estate and avoiding the elective share of the spouse; but life insurance proceeds payable to the surviving spouse are included in the second category, because it seems unfair to allow a surviving spouse to disturb the decedent's estate plan if the spouse has received ample provision from life insurance. In this category no distinction is drawn as to whether the transfers are made before or after marriage.

[¶ 13] Here, the issue is whether the property distributed to Sarah in the 1982 divorce is "property owned by the surviving spouse at the decedent's death . . . to the extent the owned property . . . is derived from the decedent by any means

other than testate or intestate succession without a full consideration in money or money's worth," within the meaning of N.D.C.C. § 30.1–05–02(2).

[¶ 14] The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *Matter of Estate of Opatz*, 554 N.W.2d 813, 815 (N.D.1996). Our primary goal in construing statutes is to ascertain legislative intent. *Id.* In ascertaining legislative intent, we look first at the words used in a statute, and we give those words their ordinary, plain-language meaning. *In re Estate of Wirtz*, 2000 ND 59, ¶ 8, 607 N.W.2d 882. We construe statutes as a whole to give effect to each of their provisions whenever fairly possible. *Id.* We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law. *Luken*, 551 N.W.2d at 798. We also may look to the Editorial Board Comments of the Uniform Probate Code to interpret its provisions. *Zimmerman*, 1998 ND 116, ¶ 21, 579 N.W.2d 591.

[¶ 15] We initially consider whether Sarah's property was "derived from [Wallace] by any means other than testate or intestate succession." The Uniform Probate Code Editorial Board Comment to N.D.C.C. § 30.1–05–02 says that, for property owned by a surviving spouse, "the time when the surviving spouse derives her wealth from the decedent is immaterial [and] no distinction is drawn as to whether the transfers are made before or after marriage." Although Sarah received most of her property in the divorce decree before her remarriage to Wallace, the Editorial Board Comment and the plain language of N.D.C.C. § 30.1–05–02(2) do not exclude from Wallace's augmented estate the property distributed to Sarah in the 1982 divorce. *See Matter of Ridgeway*,

877 S.W.2d 167, 170–71(Mo.Ct.App.1994) (recognizing surviving spouse's property may be derived from decedent spouse before marriage). *Compare* N.D.C.C. § 30.1–05–02(1) (limiting property transferred by decedent to any person other than surviving spouse to property transferred at any time during the marriage). The ordinary meaning of "derive" is "to get or receive (from a source)" or "to trace from or to a source." Webster's New World Dictionary 380 (2nd Coll. Ed.1980). *See also Matthews v. State*, 187 N.J.Super. 1, 453 A.2d 543, 547 (App.Div.1982). The use of the word "any" in a statute generally is comprehensive in scope and inclusive in meaning in the sense of "all" or "every." *See State v. Zueger*, 459 N.W.2d 235, 237 (N.D.1990).

[¶ 16] When the ordinary meaning of the words used in N.D.C.C. § 30.1–05–02(2) are considered together, we construe those words to mean the property distributed to Sarah in the 1982 divorce was "derived from [Wallace] by any means other than testate or intestate succession," and that property therefore is includable in his augmented estate to the extent it was derived from him "without a full consideration in money or money's worth."

[¶ 17] In *In re Estate of Carman*, 213 Neb. 98, 327 N.W.2d 611 (1982), the Nebraska Supreme Court discussed the meaning of "money's worth." In *Carman*, at 613–14, a couple jointly operated a farm during their marriage, and the wife extensively participated in the operation. After the husband died, the wife, as a surviving spouse, claimed only one-half of the farming property should be included in his augmented estate. *Id.* at 613. The surviving spouse claimed the other half of the farming property was her separate property because she had essentially functioned as a partner in the farming operation. *Id.* at 613. The Nebraska Supreme Court

disagreed, concluding "a spouses's labor does not become a contribution 'in money's worth' such as to take one-half the value of jointly produced and acquired assets out of the augmented estate computation." *Id.* at 614.

[¶ 18] Although the facts in *Carman* differ from this case, the underlying conclusion about "money's worth" is consistent with the ordinary and general meaning of "money or money's worth." In other contexts, that phrase generally means cash or its equivalent, *see Gillett v. Chicago Title & Trust Co.*, 230 Ill. 373, 82 N.E. 891, 904 (1907), or money or other consideration reducible to money value. *See* 26 C.F.R. § 301.6323(h)–1(a)(3) (2001). *See also Adelvision L.P., v. Groff*, 859 F.Supp. 797, 806 (E.D.Pa.1994). Under bankruptcy law, a debtor's future contributions of labor, experience, and expertise in running a farm are not "money or money's worth," *see Northwest Bank v. Ahlers*, 485 U.S. 197, 204–05, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), and it is settled law that "sweat equity" is not money's worth. *See In re Woodmere Investors, Ltd.*, 178 B.R. 346, 363 (Bankr. S.D.N.Y.1995); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 483 (Bankr.D.N.J.1990).

[¶ 19] In yet other contexts, a spouse's contribution has been held to be "in money's worth." *Leve v. Leve*, 704 S.W.2d 263, 267 (Mo.Ct.App.1986) (affirming the probate court's holding "that homemaking duties may be considered as contributions in money's worth" for the purpose of determining a spouse's contribution to the acquisition of jointly held property); *In re Estate of Kersten*, 71 Wis.2d 757, 239 N.W.2d 86, 90 (1976) (holding that, for inheritance tax purposes, a wife's contribution of "services, industry, and skills to operation of the farm enterprise constituted contribution 'in money's worth' in the production of the joint income used to acquire the jointly held assets.").

[¶ 20] Although the recognition of a spouse's contributions to a marital relationship governs equitable property distributions, *see, e.g., Williams v. Williams*, 302 N.W.2d 754, 758 (N.D.1981), we are not persuaded those contributions constitute money or money's worth within the meaning of N.D.C.C. § 30.1–05–02(2). The policy considerations permitting a surviving spouse to receive an elective share of the decedent's augmented estate are different than the policy considerations underlying an equitable distribution in a divorce action. One of the purposes of augmenting a decedent's probate estate to compute an elective share is to prevent a surviving spouse from electing a share of a probate estate when the spouse already has received a fair share of the accumulated wealth of the decedent from nonprobate transfers. *See* N.D.C.C. § 30.1–05–02 (Uniform Probate Code Editorial· Board Comment). That purpose is fortified by the presumption that property owned by the surviving spouse as of the decedent's death is derived from the decedent. *See Luken*, 551 N.W.2d at 798. Under the unique factual circumstances of this case, the policy of precluding a surviving spouse from receiving more than a fair share of the accumulated wealth of the decedent would not be served by construing a spouse's contributions to a marriage as money or money's worth under N.D.C.C. § 30.1–05–02(2). If the statutes and the commentary thereto did not reflect current policy in these matters, it was for the legislative branch, which established the policy, to conform the statutes and commentary to reflect current reasoning.

[¶ 21] When construed to effect the purposes for permitting a surviving spouse to take an elective share, we conclude the property distributed to Sarah in the 1982

divorce was not derived from Wallace for full consideration in money or money's worth within the meaning of N.D.C.C. § 30.1–05–02(2). We conclude the property is includable in Wallace's augmented estate and was subject to the rebuttable presumption it was derived from Wallace except to the extent Sarah established it was derived from another source under N.D.C.C. § 30.1–05–02(2)(c).

[¶ 22] Sarah argues the divorce decree, the findings of fact, conclusions of law, and order for judgment in the divorce action, and the prenuptial agreement established her property came from the distribution in the divorce action, and that evidence was sufficient to rebut the presumption her property was derived from Wallace. That evidence, however, does not constitute evidence of money or money's worth, and we conclude it does not establish Sarah's property was derived from another source. We conclude that evidence is insufficient, as a matter of law, to rebut the presumption Sarah's property was derived from Wallace. Sarah does not argue that any of the property awarded to her in the 1982 divorce decree was owned separately by her prior to the divorce, gifted to her alone from someone other than Wallace, inherited by her alone from someone other than Wallace, or paid for out of her sole income. *See, e.g., Estate of Lettengarver,* 249 Mont. 92, 813 P.2d 468, 472 (1991) (husband's testimony that property being sold under a contract for deed was acquired with proceeds from the sale of property owned solely by the husband was sufficient to rebut the presumption that the contract for deed was derived from his wife); *Estate of Fisher,* 545 A.2d 1266, 1270 (Me. 1988) (husband's testimony that money in a joint bank account was from his pay-

checks was sufficient to rebut the presumption that the account was derived from his wife).

[¶ 23] In the absence of any other evidence about the source of Sarah's property, we hold the probate court erred as a matter of law in excluding from Wallace's augmented estate the property distributed to Sarah in the 1982 divorce. The parties do not dispute that if Sarah's property is included in Wallace's augmented estate, she already has received sufficient property to satisfy her elective share. We therefore hold Sarah has received sufficient property to satisfy her elective share, and she is not entitled to any further property to satisfy her claim for an elective share.[2]

### III

[¶ 24] Sarah argues the probate court erred in allowing the personal representative attorneys' fees. She argues the probate court misapplied the law, because it considered only the personal representative's good faith and failed to address whether the personal representative's actions benefitted the estate.

[¶ 25] Under N.D.C.C. § 30.1–05–02, the augmented estate includes the probate estate reduced by certain deductions, including attorneys' fees. Section 30.1–18–20, N.D.C.C., provides:

> If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative or nominee is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorneys' fees incurred.

2. In her appeal, Sarah argues she is entitled to interest on her elective share. Because we conclude Sarah has already received suffi-

cient property to satisfy her elective share, we do not consider that issue.

[¶ 26] In *Flaherty v. Feldner*, 484 N.W.2d 515, 518 (N.D.1992), we said:

In construing § 30.1–18–20, we have said that "it must appear that the personal representative acted in good faith, that his conduct was free from fraud, and that he benefitted the estate before attorney fees and costs may be awarded by the court." *Matter of Estate of Honerud*, 326 N.W.2d 95, 97 (N.D.1982). A "benefit" to an estate certainly includes services that bring about an enhancement in value or an increase in the assets of the estate. *See, e.g., Matter of Estate of Ambers*, 477 N.W.2d 218, 224 (N.D.1991). However, we believe that a "benefit" to the estate is not to be measured solely in monetary terms, but can also include a personal representative's good faith attempts to effectuate the testamentary intention set forth in a facially valid will. *See, e.g., In re Estate of Lewis*, 442 So.2d 290, 292 (Fla.Ct.App. 1983).

[¶ 27] The probate court denied Sarah's motion to disallow the personal representative's attorneys' fees, concluding the proceedings represented "a good faith attempt by the parties to apply the law to Wallace's will and that the issue of inclusion in the augmented estate of the assets received by [Sarah] in the divorce is an issue in genuine controversy." Because we have agreed with the personal representative's position regarding Sarah's claim for an elective share of Wallace's augmented estate, the personal representative's actions have ultimately preserved additional assets for the estate and we need not further consider this matter. The personal representative's actions benefitted the estate, and he is entitled to reasonable attorneys' fees incurred on behalf of the estate.

## IV

[¶ 28] We reverse the probate court's decision to exclude Sarah's property from Wallace's augmented estate for purposes of calculating her elective share, and we affirm the court's decision to allow the personal representative attorneys' fees.

[¶ 29] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.