Jensen, Justice.
 

 [¶ 1] Glenvin Albrecht ("Glenvin") appeals, and Mark Albrecht ("Mark"), the personal representative of the estate ("the Estate") of Sharleen Albrecht ("Sharleen"), cross-appeals from orders in an informal probate denying Glenvin's claims against the Estate. Glenvin argues that the district court's decision to deny Glenvin a recovery of jointly held marital assets transferred by Sharleen to the parties' son, Mark, should be reversed because, prior to Sharleen's death, she transferred the assets in violation of restraining provisions in a pending divorce proceeding. Glenvin further contends that the district court abused its discretion in denying Glenvin's request for a recovery under principles of equity and its finding that Sharleen had not engaged in economic misconduct during prior divorce proceedings is clearly erroneous. The Estate argues that the district court improperly extended the time to commence an action against the Estate and erred as a matter of law in determining that Glenvin held the status of a surviving spouse with regard to the Estate. We affirm the district court's order holding that Glenvin was a surviving spouse, denying Glenvin's request for contempt, the district court's order denying Glenvin's request for equitable relief and the district court's order denying Glenvin's request for relief from Sharleen's economic waste.
 

 I
 

 [¶ 2] Glenvin initiated divorce proceedings against Sharleen in February 2010.
 
 See
 

 Albrecht v. Albrecht
 
 ,
 
 2014 ND 221
 
 , ¶ 2,
 
 856 N.W.2d 755
 
 ("
 
 Albrecht I
 
 "). In
 
 Albrecht I
 
 , the district court granted the couple a divorce in October 2012, but reserved for subsequent consideration the division of marital property.
 
 Id
 
 . While the divorce proceedings were pending, Sharleen liquidated $75,000 from a mutual fund jointly owned with Glenvin and used the proceeds to purchase an annuity solely in her name and designating Mark as the beneficiary. Sharleen also exchanged an annuity she jointly owned with Glenvin for an annuity naming herself as the sole owner, liquidated her solely owned annuity, and used the funds to purchase a home which she titled jointly with Mark.
 

 [¶ 3] Sharleen passed away in July 2013. In August 2013, the district court issued a decision distributing the marital property in the divorce action. Glenvin appealed. This Court dismissed the divorce action after concluding that Sharleen's death before entry of a final judgment abated the divorce action.
 
 See
 

 Albrecht I
 
 ,
 
 2014 ND 221
 
 , ¶ 15,
 
 856 N.W.2d 755
 
 .
 

 [¶ 4] In this proceeding, Glenvin has asserted a claim against Sharleen's estate. On February 17, 2015, the Estate served and filed a notice of the disallowance of Glenvin's claim which included notification
 consistent with N.D.C.C. § 30.1-19-04 that the disallowance could be challenged if legal proceedings were commenced within sixty days of the notice of disallowance. On March 13, 2015, before the expiration of the sixty-day time period for commencing a claim, the Estate filed a motion for summary judgment seeking to confirm its disallowance of Glenvin's claim. The motion for summary judgment asserted that Glenvin's claim failed as a matter of law because he was not a surviving spouse. On April 16, 2015, Glenvin responded to the motion for summary judgment and on May 13, 2015, Glenvin filed a petition in response to the notice of the disallowance of his claim. In both the response to the motion for summary judgment filed within the sixty-day period and the petition filed outside the sixty-day period, Glenvin sought recovery of the assets that had been transferred from joint ownership and ultimately to Mark at the time of Sharleen's death.
 

 [¶ 5] During the hearing on the motion for summary judgment, the Estate argued the disallowance of Glenvin's claim was appropriate because Glenvin was not a surviving spouse and Glenvin had failed to timely challenge the disallowance as required by N.D.C.C. § 30.1-19-04, because Glenvin's petition challenging the disallowance was filed more than sixty days after the notice of the disallowance had been served. The district court determined Glenvin qualified as a surviving spouse and determined that an extension of the time for Glenvin to file his challenge to the disallowance of his claim was necessary to "avoid injustice." The district court also determined the claims raised by Glenvin required an evidentiary hearing and could not be disposed of through summary judgment proceedings.
 

 [¶ 6] At the evidentiary hearing, Glenvin sought recovery equal to the value of the assets Sharleen transferred to Mark at the time of her death. Glenvin contended that a recovery can be provided through contempt proceedings, principles of equity, or as a remedy for Sharleen's economic misconduct. The district court denied Glenvin's claim and upheld the disallowance after determining that Sharleen's transfer of assets to her son did not constitute contempt, that no equitable relief was warranted, and that Sharleen's actions did not amount to economic misconduct.
 

 II
 

 [¶ 7] The Estate contends the district court erred as a matter of law in extending the time for Glenvin to file his petition challenging the disallowance of his claim against the Estate.
 

 [¶ 8] The Estate provided notice that Glenvin's claim was being denied on February 17, 2015. The deadline for filing legal action in response to the disallowance is governed by N.D.C.C. § 30.1-19-04(3), which reads in part, as follows:
 

 [A] proceeding on the claim may not be commenced more than sixty days after the personal representative has mailed a notice of disallowance, but, in the case of a claim which is not presently due or which is contingent or unliquidated, the personal representative may consent to an extension of the sixty-day period, or to avoid injustice, the court, on petition, may order an extension of the sixty-day period, but in no event may the extension run beyond the applicable statute of limitations.
 

 [¶ 9] Glenvin's petition was filed on May 13, 2015, more than sixty days after the disallowance of the claim. The district court, relying on the language of N.D.C.C. § 30.1-19-04(3), determined that "to avoid injustice" the sixty-day period should be extended to allow Glenvin's claim. The Estate cites to authority from other jurisdictions
 interpreting the same or similar statutory language which requires the request for an extension to be made before the expiration of the sixty-day period.
 

 [¶ 10] It is not necessary to determine whether a request for an extension must be made within the sixty-day period to allow extension of the time period. In this case, within the sixty-day period, the Estate commenced legal proceedings to determine the validity of Glenvin's claim. We conclude the Estate's motion for summary judgment satisfied the requirement that a proceeding on the claim be commenced within sixty days after the personal representative mailed the notice of disallowance, and the district court did not err in considering Glenvin's challenge to the disallowance of his claim.
 

 [¶ 11] The Estate contends the district court erred in determining that Glenvin was a surviving spouse as defined by N.D.C.C. § 30.1-10-02, which provides in part:
 

 1. An individual who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse unless, by virtue of a subsequent marriage, the spouse is married to the decedent at the time of death. A decree of separation that does not terminate the status of husband and wife is not a divorce for purposes of this section.
 

 2. For purposes of chapters 30.1-04 through 30.1-07 and section 30.1-13-03, a surviving spouse does not include:
 

 a. An individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment of their marriage, which decree or judgment is not recognized as valid in this state, unless subsequently th[ey] participate in a marriage ceremony purporting to marry each to the other or live together as husband and wife[.]
 

 [¶ 12] Sharleen died during the parties' divorce proceedings after the district court had issued a judgment of divorce, but before resolving the reserved issue of property division. This Court concluded the following with regard to the status of the divorce proceedings following Sharleen's death:
 

 Under this Court's finality jurisprudence, we conclude Sharleen Albrecht's death before entry of a final judgment from which an appeal could be taken abated the divorce action. We therefore reverse the divorce judgment and remand for dismissal of the divorce action.
 

 Albrecht I
 
 ,
 
 2014 ND 221
 
 , ¶ 15,
 
 856 N.W.2d 755
 
 .
 

 [¶ 13] The Estate contends this case falls within the exclusion from the definition of surviving spouse as provided in N.D.C.C. § 30.1-10-02(2)(a). As determined in
 
 Albrecht I
 
 , the divorce case, an initial judgment for divorce was entered pursuant to the consent of the parties, Sharleen died and a second judgment was subsequently entered that included a division of the parties' property. Glenvin appealed only the district court's determinations regarding property division. Neither party appealed the district court's initial judgment of divorce. A plurality of this Court in
 
 Albrecht I
 
 held Sharleen's death abated the divorce action, nullifying the marital dissolution and divorce-related property distribution.
 
 Albrecht I
 
 ,
 
 2014 ND 221
 
 , ¶ 15,
 
 856 N.W.2d 755
 
 . As a result, no property division occurred in the divorce and the Albrechts still were married when Sharleen died.
 

 [¶ 14] This case does not fall within the exclusion from the definition of surviving spouse provided by N.D.C.C. § 30.1-10-02(2)(a). The pertinent language of the
 statute states, "[A] surviving spouse does not include: ... An individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment of their marriage, which decree or judgment is not recognized as valid in this state...." N.D.C.C. § 30.1-10-02(2)(a) [ U.P.C. § 2-802(b)(1) ].
 

 [¶ 15] The Estate asserts Glenvin is not a surviving spouse under terms of this statute because he obtained a final decree of divorce, albeit one that ultimately was not recognized in North Dakota. While it is true Glenvin sought and obtained a divorce from Sharleen, that divorce was rendered a nullity by this Court's holding in
 
 Albrecht I
 
 . Under these unusual circumstances, we cannot agree that the divorce judgment can be considered a "final decree or judgment of divorce from the decedent" for purposes of N.D.C.C. § 30.1-10-02(2)(a). To hold otherwise denies Glenvin an equitable division of property in the divorce proceeding, and excludes him from a surviving spouse's share of property in a probate proceeding.
 

 [¶ 16] Section 30.1-10-02(2), N.D.C.C., is designed to prevent a couple from inheriting from each other when they intended to divorce but, for some reason remain legally married. That is evident from the words of the statute. That is evident from the "Rationale" statement in the Uniform Probate Code:
 

 Although some existing statutes bar the surviving spouse for desertion or adultery, the present section requires some definitive legal act to bar the surviving spouse. Normally, this is divorce. Subsection (a) states an obvious proposition, but subsection (b) deals with the difficult problem of invalid divorce or annulment, which is particularly frequent as to foreign divorce decrees but may arise as to a local decree where there is some defect in jurisdiction;
 
 the basic principle underlying these provisions is estoppel against the surviving spouse
 
 . Where there is only a legal separation, rather than a divorce, succession patterns are not affected; but if the separation is accompanied by a complete property settlement, this may operate under Section 2-213 as a waiver or renunciation of benefits under a prior will and by intestate succession.
 

 Comment to U.P.C. § 2-802 (2013) (emphasis added).
 

 [¶ 17] In the present case, no reason exists for Glenvin to not inherit from Sharleen's estate. The divorce was abated in
 
 Albrecht I
 
 . As a result, Glenvin was not divorced. He did not receive a final decree of divorce upon which he could rely for either marital dissolution or distribution of the marital estate. Rather, that divorce judgment was nullified by this Court. The legal and actual effect of the nullified divorce proceeding is that the marital property owned by Glenvin and Sharleen was not divided and distributed. Without legal or actual distribution of the marital estate, the logic disappears for barring an actual surviving spouse from sharing in the distribution of the decedent's estate. Therefore, N.D.C.C. § 30.1-10-02(2) does not disqualify Glenvin as Sharleen's surviving spouse under the circumstances in this case.
 

 [¶ 18] Glenvin's claim against the Estate asserted that the estate was in possession of marital property that should not be included as part of the estate. Following a contested hearing the district court summarized Glenvin's claim(s) against the Estate as follows:
 

 Glen's [Glenvin's] claims to the funds in dispute are that Sharleen violated the restraining provisions of the summons and the interim order in the divorce action, and is therefore in contempt of court, and that equity requires the
 Court, using its inherent authority, to order the funds be restored to the original status of joint ownership with the right of survivorship in Glen. Related to Glen's claim of violation of the restraining provisions of the summons and interim order in the divorce action is his claim that Sharleen committed economic misconduct in making the transfers.
 

 The district court denied Glenvin's request for contempt, denied Glenvin's request for equitable relief and denied Glenvin's request for relief pursuant to his assertion that Sharleen committed economic waste.
 

 [¶ 19] Glenvin contends the district court erred in determining that Sharleen's transfer or modification of the ownership of assets during the pendency of the divorce proceedings was not contempt. The summons in the divorce proceedings contained the following restrictions:
 

 (1) Neither spouse shall dispose of, sell, encumber, or otherwise dissipate any of the parties' assets, except:
 

 a. For necessities of life or for the necessary generation of income or preservation of assets; or
 

 b. For retaining counsel to carry on or to contest the proceeding;
 

 If a spouse disposes of, sells, encumbers, or otherwise dissipates assets during the interim period, that spouse shall provide to the other spouse an accounting within 30 days.
 

 See also
 
 N.D.R.Ct. 8.4(a)(1)(A). The interim order entered by the district court included the following restrictions:
 

 5. Plaintiff and Defendant are restrained and enjoined from disposing of, or encumbering any of their property, real or personal, during the pendency of this action, except as may be necessary in the usual and ordinary conduct of business.
 

 [¶ 20] The district court considered and subsequently denied Glenvin's request for contempt sanctions after determining that remedial sanctions do not abate upon death.
 
 See
 

 Investors Title Ins. Co. v. Herzig
 
 ,
 
 2010 ND 138
 
 , ¶ 40,
 
 785 N.W.2d 863
 
 . The Estate argued that N.D.C.C. § 27-10-01.3(1)(a) requires remedial contempt motions to be filed "in the proceeding to which the contempt is related" and therefore violation of orders within the abated divorce proceeding could not be used to initiate a request for a remedial sanction within the estate proceedings.
 

 [¶ 21] We agree with the Estate that N.D.C.C. § 27-10-01.3(1)(a) requires a request for a remedial sanction to be raised within the proceedings to which the alleged improper conduct is related.
 
 Investors Title
 
 is distinguishable from the case at hand for two reasons. First, in
 
 Investors Title
 
 the request for the imposition of a sanction for alleged discovery violations was raised in the proceedings to which the conduct was related.
 
 2010 ND 138
 
 , ¶¶ 4-16,
 
 785 N.W.2d 863
 
 . Second, in
 
 Investors Title
 
 the request for a sanction was resolved and the remedial sanction ordered prior to the death of the individual who was subject to the remedial sanction.
 
 Id
 
 . This Court does not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same.
 
 Washburn v. Levi
 
 ,
 
 2015 ND 299
 
 , ¶ 17,
 
 872 N.W.2d 605
 
 . Although it was unnecessary for the district court to address Glenvin's request for contempt, and because Sharleen's conduct was also considered as part of Glenvin's claim for equitable relief, the district court's denial of the claim reached the correct result, but for the wrong reason.
 

 [¶ 22] Glenvin asserts that Sharleen's removal of Glenvin as a joint tenant and Sharleen's designation of her son as the beneficiary were improper and that he
 is entitled to a recovery equal to the value of those assets. The district court thoroughly addressed Glenvin's argument that principles of equity required the district court to account for the transfers to Mark upon her death. The district court relied on two Montana decisions holding that principles of equity provide a court with discretionary authority to void changes of beneficiaries made by a decedent in violation of a restraining order in a divorce action.
 
 See
 

 Estate of Corrigan
 
 ,
 
 2014 MT 337
 
 , ¶ 19,
 
 377 Mont. 364
 
 ,
 
 341 P.3d 623
 
 ;
 
 Briese v. Public Employees' Retirement Bd.
 
 ,
 
 2012 MT 192
 
 , ¶ 41,
 
 366 Mont. 148
 
 ,
 
 285 P.3d 550
 
 .
 

 [¶ 23] We review a district court's decision whether or not to exercise its equitable powers under the abuse of discretion standard.
 
 See
 

 Fahey v. Fife
 
 ,
 
 2017 ND 200
 
 , ¶ 18,
 
 900 N.W.2d 250
 
 . A court abuses its discretion only when it acts in an arbitrary, unreasonable or unconscionable manner; its decision is not the product of a rational mental process leading to a reasoned determination; or it misinterprets or misapplies the law.
 
 See
 

 Booen v. Appel
 
 ,
 
 2017 ND 189
 
 , ¶ 24,
 
 899 N.W.2d 648
 
 .
 

 [¶ 24] The district court's consideration of possible equitable remedies was premised on the assumption that Glenvin had no alternative legal claim to redress Sharleen's transfer of assets during the divorce proceedings in violation of the temporary restraining provisions. That assumption was not correct. As a surviving spouse Glenvin had "a right of election ... to take an elective share amount equal to fifty percent of the augmented estate." N.D.C.C. § 30.1-05-01(1). The equitable claims asserted by Glenvin would have been considered within a determination of a claim for an elective share of the augmented estate.
 
 See
 
 N.D.C.C. § 30.1-05-02(3)(b). The Estate is even provided with the power to hold recipients liable for the value of nonprobate transfers. N.D.C.C. § 30.1-05-04. We conclude that considering the equitable claims that would have been otherwise included within a claim for an elective share of augmented estate was unnecessary. Because it was unnecessary for the district court to address Glenvin's claim for equitable relief, the district court's denial of the claim was right for the wrong reason.
 

 [¶ 25] The district court also concluded that the removal of Glenvin as a joint tenant and the designation of Mark as beneficiary upon her death did not remove the assets from the marital estate. The context within which the district court concluded the assets remained in the marital estate was a part of the district court's conclusion that those actions did not violate the restraining provisions in the summons and interim order. We disagree.
 

 [¶ 26] The removal of Glenvin as a joint tenant and the designation of Mark as beneficiary upon her death can be considered to be both the dissipation of the assets and the encumbrance of the assets. Upon Sharleen's death, those assets did not remain part of the marital estate and ownership of those assets transferred from Sharleen to Mark. Had the original designation of Glenvin as a joint tenant remained, the assets would have been transferred to Glenvin at the time of Sharleen's death.
 
 See
 

 Cranston v. Winters
 
 ,
 
 238 N.W.2d 647
 
 , 651 (N.D. 1976) ("[W]e note the fundamental fact that title to joint-tenancy property in this State vests immediately in a surviving joint tenant upon the death of the other joint tenant. It passes to the survivor by right of survivorship and not by the will."). Sharleen's actions violated the restraining provisions in the summons and the interim order by dissipating and encumbering the marital assets.
 

 [¶ 27]
 

 As noted above, N.D.C.C. § 27-10-01.3(1)(a) limits the consideration of a remedial contempt sanction to the proceedings to which the conduct relates and precludes within this action consideration of a remedial sanction against Sharleen for the violation of the restraining provisions within the divorce proceedings. Additionally, like the equitable claims, the joint tenancy assets would have been included within the calculation of the augmented estate. As such, the district court's denial of the claim makes reversal of the district court's determination unnecessary.
 

 [¶ 28] Glenvin also argues the district court erred in finding Sharleen did not commit economic misconduct by destroying Glenvin's joint tenancy and allowing the assets to transfer to Mark upon her death. "Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate. Financial misconduct and dissipation of assets are grounds for an unequal property distribution."
 
 Weigel v. Weigel
 
 ,
 
 2015 ND 270
 
 , ¶ 22,
 
 871 N.W.2d 810
 
 (citations omitted).
 

 [¶ 29] This Court has not previously considered whether a claim for "economic misconduct" can be asserted against a spouse outside of divorce proceedings and independent of consideration of whether or not an unequal property division is appropriate. We hold that the assertion of an independent claim for "economic waste" outside of divorce proceedings is inappropriate. We need not address whether the district court's findings were clearly erroneous, because an independent claim for "economic waste" was not appropriate and consideration of the joint tenancy assets would have been available had Glenvin requested an elective share of the augmented estate.
 

 III
 

 [¶ 30] We affirm the district court's order determining that an action was timely commenced to resolve the Estate's disallowance of Glenvin's claim. We also affirm the district court's order determining Glenvin was a surviving spouse, denying Glenvin's request seeking sanctions for contempt, the district court's order determining that equitable principles do not entitle Glenvin to a recovery from the estate and the district court's order denying Glenvin's claim for "economic waste."
 

 [¶ 31] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.