# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 189

In the Matter of the Estate of Leo Grenz, Deceased

| | |
|---|---|
| Kelly Grenz, personal representative of the Estate of Leo Grenz, deceased, | Petitioner and Appellant |
| v. | |
| Donavin Grenz, David Grenz, | Respondents and Appellees |
| and | |
| Lee Atta Horner and Kelly Grenz, personal representative of the Estate of Sally Grenz, | Respondents |

## No. 20190363

Appeal from the District Court of Emmons County, South Central Judicial District, the Honorable John W. Grinsteiner, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and Crothers joined. Surrogate Judge Sandstrom filed a dissenting opinion.

Timothy D. Lervick, Bismarck, N.D., for petitioner and appellant and respondent Kelly Grenz.

Ronald H. McLean (argued) and Ian R. McLean (on brief), Fargo, N.D., for respondents and appellees Donavin Grenz and David Grenz.

**Tufte, Justice.**

[¶1]   Kelly Grenz, as personal representative of the Estate of Leo Grenz, appeals from orders and judgments partially invalidating the will of Leo Grenz. The district court invalidated a portion of the will resulting from undue influence and gave effect to a portion of a contingent distribution clause the court found was consistent with Leo Grenz's testamentary intent.   We affirm, concluding the court properly applied the equitable doctrine of partial invalidity.

I

[¶2]   Leo Grenz died testate.   Leo and his second wife, Sally Grenz, had one child together, Kelly Grenz.   Leo also had three children with his first wife: Donavin Grenz, David Grenz, and Lee Atta Horner.   Leo Grenz was survived by Sally Grenz and all of his children.   Sally Grenz died during these proceedings.   She has been replaced by Kelly Grenz as the personal representative of her estate.

[¶3]   Leo Grenz's will disposes of his estate, and, as relevant to this appeal, the shares he owned in JT Ranch, via its residuary clause, which provides:

> ARTICLE FIVE. <u>RESIDUE.</u>
> A.   <u>Surviving Spouse.</u>  I give and devise all of the rest, residue and remainder of my property of every kind and description, wherever situated and whether acquired before or after the execution of this Will, to my spouse, Sally Grenz, if she shall survive me.
> B.   <u>Children.</u>  In the event that my spouse does not survive me, I make the following bequests:
>   (1)   I give and devise an undivided one-third of my stock in JT Ranch, Inc., to each of my sons, namely, Donavin Grenz, David Grenz and Kelly Grenz.
>   (2)   I give and devise to my daughter, Leatta Horner, the sum of $10,000.00.

(3) I give and devise all of the rest, residue and remainder of my property of every kind and description, wherever situated and whether acquired before or after the execution of this Will, to my son and daughter-in-law, Kelly Grenz and Kelley Grenz, in equal shares.

[¶4] The will was admitted to probate, and Kelly Grenz was appointed personal representative. Donavin Grenz and David Grenz objected to the probate, arguing Leo Grenz intended to devise his ownership in JT Ranch to them but he was unduly influenced not to do so by Sally Grenz and Kelly Grenz.

[¶5] The district court held a hearing on the objection. On the basis of consistent statements over many years that Leo Grenz made to his family members and to an individual who rented a portion of JT Ranch, the court found Leo Grenz's testamentary intent was for the ranch shares to go to Donavin Grenz and David Grenz. The court found Leo Grenz was suffering from Parkinson's disease and declining memory when he executed the will. The court also found Sally Grenz and Kelly Grenz isolated Leo Grenz from his other family members and they transported him to appointments with the attorney who prepared the will, which they also attended.

[¶6] The district court concluded that Sally Grenz and Kelly Grenz exercised undue influence over Leo Grenz and that the will's disposition of the JT Ranch shares was contrary to his testamentary intent. To accomplish Leo Grenz's testamentary intent, the court ordered the portions of the will's residuary clause to be struck to the extent they devised the JT Ranch shares to Sally Grenz and Kelly Grenz. The court gave effect to a portion of the contingent distribution clause that favored Donavin Grenz and David Grenz and ordered the JT Ranch shares be distributed to them.

II

[¶7] Kelly Grenz argues the district court improperly "rewrote" the will. He does not challenge the district court's finding regarding Leo Grenz's testamentary intent or the court's determination that he and Sally Grenz exercised undue influence. Nor does he challenge the court's decision to

2

partially invalidate the will.  However, he argues that because of his and Sally Grenz's undue influence, the will does not effectively dispose of the JT Ranch shares.  He therefore claims the shares should be distributed according to intestate succession.

[¶8]  Donavin Grenz and David Grenz argue the district court properly applied the doctrine of partial invalidity to avoid an unjust result. They note that under the laws of intestacy, Sally Grenz's estate would acquire the majority of the shares, and Kelly Grenz would be entitled to a share as Leo Grenz's descendant plus the interests he inherits from Sally Grenz.  They claim the court properly applied its equitable powers to accomplish Leo Grenz's testamentary intent and to prohibit the wrongdoers from benefitting from their misconduct.

A

[¶9]  Although neither party objects to the district court's application of the doctrine of partial invalidity, we must determine whether it is a remedy available under North Dakota law. The answer to that question, which we have not decided, is necessary for us to determine whether the relief granted by the district court was proper.

[¶10] The doctrine of partial invalidity allows a court to separate a portion of a will that is the product of undue influence from other portions of the will that are valid:

> [T]he great majority of American jurisdictions have endorsed the view that where a part of a testamentary instrument is shown to have been the result of undue influence and therefore not the testator's will, other portions of the instrument may nevertheless be given effect, at least if such other portions are separable from the concededly invalid ones.

Alan R. Gilbert, Annotation, *Partial Invalidity of a Will,* 64 A.L.R.3d 261 (1975). Courts do not apply the doctrine when it will "defeat the manifest intent of the testator, interfere with the general scheme of distribution, or work an injustice to other heirs."  79 Am. Jur. 2d *Wills* § 357 (2d ed. 2020).  *See also Estate of Lloyd*, 189 N.W.2d 515, 520 (S.D. 1971).

3

[¶11] Prior to North Dakota's adoption of the Uniform Probate Code, this Court applied the doctrine of partial invalidity in *Black v. Smith*, 58 N.D. 109, 224 N.W. 915 (1929). The testator and his wife became severely ill, and the testator's wife died. *Id.* at 917. Shortly after her death, the testator executed a will. *Id.* There was a factual dispute concerning whether the beneficiaries allowed the testator to execute the will while concealing from him the fact that his wife had died. *Id.* at 923-24. Because she had predeceased him, he had inherited her property and his will governed its disposition. *Id.* at 920. The will was challenged, and on appeal this Court explained that even if the beneficiaries' motive for concealing the wife's death was not malicious, their behavior was still fraudulent. *Id.* at 924. The Court then held the fraud could only invalidate the portion of the will that was fraudulently induced:

> [T]he effect of any fraud resulting from an innocent concealment of the fact of [the wife's] death would . . . extend no further than to render void the will in so far as it would operate upon the property which the deceased had inherited from his wife almost immediately before the making of the will. A majority of the court is agreed that it was error to submit the question of fraud to the jury in such a manner as to warrant the setting aside of the will altogether on that account, and that at most it could have had but the limited effect indicated.

*Id.* at 925.

[¶12] Although our common law recognizes the doctrine of partial invalidity, "there is no common law in any case in which the law is declared by the code." N.D.C.C. § 1-01-06. The Uniform Probate Code now governs probate proceedings in North Dakota. *See* N.D.C.C. tit. 30.1. We must therefore determine whether it has supplanted our common law rule.

[¶13] In *Estate of Conley*, 2008 ND 148, 753 N.W.2d 384, we were tasked with determining whether the Uniform Probate Code displaced the common law presumption of *animo revocandi*, which assumes a lost will was intentionally revoked. We noted that the Uniform Probate Code did not provide specific guidance on the issue. *Id.* at ¶¶ 18-20. Citing N.D.C.C. § 1-01-03(7), which incorporates North Dakota's common law into its general body of law, we

4

reasoned the common law presumption applied "because there is no express law regarding the *animo revocandi* presumption." *Id.* at ¶¶ 25, 27.

[¶14] Similar to *Estate of Conley*, North Dakota's Uniform Probate Code is silent on the issue of whether it supplanted the prior common law rule of partial invalidity. There is no provision expressly allowing it; nor is there one expressly prohibiting it. Given this uncertainty, we look to our neighboring jurisdiction of South Dakota, which is a Uniform Probate Code state and has faced a similar issue. N.D.C.C. § 1-02-13 (stating a "uniform statute must be so construed . . . to make uniform the law of those states which enact it"); *Estate of Zimmerman*, 2001 ND 155, ¶ 14, 633 N.W.2d 594 (considering Uniform Probate Code editorial board comments and decisions of other uniform jurisdictions for guidance).

[¶15] In *Estate of O'Keefe*, 1998 SD 92, 583 N.W.2d 138, the beneficiaries of a will inflicted fraud upon the testator while he was alive. *Id.* at ¶ 3. After he died, the testator's estate sued the beneficiaries and was awarded damages. *Id.* An innocent beneficiary petitioned the court to prohibit the wrongdoers from sharing in the award, a portion of which they were entitled to under the terms of the will. *Id.* at ¶ 4. The wrongdoers argued the court had no authority to act contrary to the will. *Id.* at ¶ 9. They claimed South Dakota's adoption of the Uniform Probate Code foreclosed the equitable power of courts sitting in probate. *Id.* at ¶ 10.

[¶16] The Supreme Court of South Dakota disagreed. It noted that, under South Dakota law, rules of equity supplement the Uniform Probate Code where it is silent. *O'Keefe*, 1998 SD 92, ¶ 10, 583 N.W.2d 138. The court found guidance in the Uniform Probate Code provision prohibiting slayers from inheriting from their victims. *Id.* at ¶ 13. The court reasoned that South Dakota has a similar public policy that prohibits perpetrators of fraud from benefitting from their misconduct. *Id.* at ¶ 14. It held the probate court could prohibit the wrongdoers from taking a share of the estate to which they were otherwise entitled under the terms of the will. *Id.*

[¶17] As in South Dakota, the district courts of this State are courts of general jurisdiction with equitable powers. N.D.C.C. § 27-05-06(3). The Legislature

5

has given the district courts the power to fashion remedies in both law and equity "necessary to . . . the full and complete administration of justice." *Id.* There is no exception or limitation in probate proceedings. *Cf. Estate of Rohrich*, 496 N.W.2d 566, 571-72 (N.D. 1993) (overturning prior decisions that held county courts sitting in probate could not exercise equitable jurisdiction). We also follow the principle that "a wrongdoer may not take advantage of his own wrong against the victim of his wrongdoing." *Beavers v. Walters*, 537 N.W.2d 647, 650-51 (N.D. 1995). That maxim has been codified. N.D.C.C. § 31-11-05(8) ("A person cannot take advantage of that person's own wrong.").

[¶18] We conclude the doctrine of partial invalidity is an available remedy under North Dakota law. It is part of our common law. It is consistent with the jurisdiction of our district courts. There is nothing in the Uniform Probate Code to indicate the legislature intended to supplant it. And it follows our codified public policy against wrongdoers benefiting from their wrongs. We make this determination while keeping in mind that "equity follows the letter and the spirit of the law and courts of equity are bound by and must follow and apply the principles of substantive law." *Schwarting v. Schwarting*, 354 N.W.2d 706, 708 (N.D. 1984). *See also Estate of Voeller*, 534 N.W.2d 24, 26 (N.D. 1995) ("an equitable remedy cannot avoid the meaning of an unambiguous statute").

B

[¶19] Having determined the doctrine of partial invalidity is an available remedy in this state, we turn to whether the district court erred in fashioning the equitable relief it granted here.

[¶20] We review a district court's exercise of its equitable powers under the abuse of discretion standard. *Estate of Albrecht*, 2018 ND 67, ¶ 23, 908 N.W.2d 135. We will not overturn a court's exercise of its equitable powers unless it acts arbitrarily, unreasonably, or unconscionably; its decision is not the product of a rational mental process leading to a reasoned determination; or it misinterprets or misapplies the law. *Id.*; *see also Rohrich*, 496 N.W.2d at 573.

6

[¶21] Kelly Grenz argues the district court misapplied the law. He cites N.D.C.C. § 30.1-04-01(1), which states, "Any part of a decedent's estate not effectively disposed of by will passes by intestate succession . . . ." Kelly Grenz argues that "[a]pplying this law to the facts of the case, because Leo's will did not effectively dispose of his JT Ranch shares due to undue influence by Sally and Kelly, the JT Ranch shares pass by intestate succession to Leo's heirs."

[¶22] We are not persuaded. Courts apply "a strong presumption" that testators do not intend for any portion of their estate to pass via intestacy and they construe wills accordingly. *Estate of Klein*, 434 N.W.2d 560, 562 (N.D. 1989). The district court invalidated the will only to the extent it devised any interest in JT Ranch to Kelly Grenz and Sally Grenz. On the basis of Leo Grenz's testamentary intent, the court gave effect to part of the contingent distribution clause that devised the JT Ranch shares to Donavin Grenz and David Grenz. Because the court gave effect to a portion of the will to distribute the shares, it cannot be said the will did "not effectively" dispose of the JT Ranch shares. The laws of intestacy therefore do not apply here.

[¶23] When a beneficiary attempts to obtain property by undue influence, "the beneficiary, although a survivor in fact, is not a survivor in the contemplation of law." *Mundwiller v. Mundwiller*, 822 S.W.2d 863, 866 (Mo. Ct. App. 1991). "[A] finding of undue influence . . . is analogous to that of the murder of the testator . . . ." *Id.* at 865. *See also* N.D.C.C. § 30.1-10-03(2) ("An individual who intentionally and feloniously kills the decedent forfeits all benefits under this title with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property, and a family allowance."). Whether a beneficiary whose undue influence invalidated a will may still claim an intestate share is a question we have not answered, and need not answer here. The district court invalidated the portion of the will resulting from undue influence and equitably treated the perpetrators of the undue influence as if they had not survived. We conclude the district court did not abuse its discretion when it applied the doctrine of partial invalidity and gave effect to a portion of Leo Grenz's will.

## III

[¶24] We affirm the district court's orders and judgments.

[¶25] Jerod E. Tufte
Gerald W. VandeWalle
Daniel J. Crothers
Jon J. Jensen, C.J.


[¶26] The Honorable Dale V. Sandstrom, Surrogate Judge, sitting in place of McEvers, J., disqualified.


**Sandstrom, Surrogate Judge, dissenting.**

[¶27] I respectfully dissent.

[¶28] The district court rewrote the will of Leo Grenz.

[¶29] The district court judgment says "the Will shall be rewritten as follows . . . ."

[¶30] The proposed judgment had been filed with the district court by the contestants Donavin and David Grenz saying "the Will shall be rewritten as follows . . . ."

[¶31] The personal representative, the appellant here, says the district court rewrote the will and identifies the lack of authority for the district court to rewrite the will as the issue on appeal.

[¶32] On appeal—despite what they said in the district court—the contestants claim the district court did not rewrite the will because "all the district court did" was rearrange words and sentences already in the will and drop other words and change who inherits 93 percent of the estate. The contestants Donavin and David Grenz say the only issue on appeal is whether the district court could partially invalidate the will, something not disputed by the personal representative.

[¶33] The majority opinion dwells on the undisputed question of whether North Dakota should recognize partial invalidity of a will, while the opinion

8

obscures the fact that the district court rewrote the will and failed to properly apply our law.

## I

[¶34] The finding of undue influence was questionable, and recognition of the doctrine of partial invalidity of a will was interesting. On appeal, the personal representative chose to forgo any dispute on those issues, willing to accept the remedy provided by a proper application of the law, the contested property passing by intestacy as provided by statute.

## A

[¶35] Leo and Sally Grenz were approaching 40 years of marriage, apparently without ever having prepared wills. It was a second marriage for each of them. They each had children from their prior marriages. They had one son together, Kelly Grenz. The three had lived as a family unit, eventually with Kelly Grenz marrying and his spouse and their children joining them, all on the Braddock farm. Then over a two-month period they met with a respected lawyer, and then on October 8, 2009, Leo and Sally Grenz executed simple reciprocal wills. Article one identified their place of residence and their families. Article two appointed their son, Kelly Grenz, as personal representative. Article three directed payment of expenses of administration and claims against the estate. Article four provided for a list of tangible personal property to be left to devisees named on the list. Article five provided that the rest of their estates would go to the spouse, if the spouse was the survivor. The final portion of article five provided what would happen to the property of each if the other spouse did not survive.

[¶36] On February 27, 2015, Leo Grenz died at age 89 and after more than 40 years of marriage. Under the terms of his will—after expenses, bills, and any separately listed personal property—all of his estate passed to his wife.

[¶37] More than a year later, Donavin Grenz objected, claiming his father lacked testamentary capacity and mental ability to make a will, the will resulted from undue influence, and the will was contrary to the intent his father had expressed.

9

[¶38] More than a year later, on July 26, 2017, a hearing was held on the objections. Those contesting the will, Donavin and David Grenz, presented testimony that from time-to-time over the years their father, Leo Grenz, had said he was going to leave them his minority shares in the JT Ranch. They dropped their claim that their father lacked testamentary capacity, which, if established, would have completely invalidated the will. They sought to paint a picture of their father as impaired by Parkinson's disease and memory problems, and no longer exercising his free will. They said his wife, Sally Grenz, was responsible for his not attending gatherings with his "first family." The personal representative argued it was just as likely Leo Grenz chose to stay away from the gatherings. His staying away was apparently nothing new. As the district court would find, "Over the period of nearly forty years, from the early 1970's until 2014, Leo attended only a handful of family events that Donavin or David invited him to attend."

[¶39] Neither side called the treating physician, but Leo Grenz's medical records were admitted. The records reflected Parkinson's and memory problems by the time of the 2009 will, but the first diagnosis of Parkinson's Dementia was in mid-2012. The contestants called a neuropsychologist who treats patients with Parkinson's disease. He never saw Leo Grenz but read the medical file and listened to the other contestant witnesses. On the basis of what he read and heard, he said Leo Grenz would have been vulnerable to undue influence from 2008 on. The court would find this testimony "relevant and compelling."

[¶40] Experienced probate attorney Malcolm Brown had prepared the wills, meeting with Leo, Sally, and Kelly Grenz and his wife twice over an eight-week period. His notes reflect that he also was preparing wills for Kelly Grenz and his wife. He testified he had no reason to believe that Leo Grenz lacked the capacity to execute the will or that the will was the product of undue influence.

[¶41] A year after the execution of the will, the contestant Donavin Grenz, a lawyer and former judge, drafted for his father a power of attorney naming Sally Grenz but limiting what she could do with the ranch interests during his lifetime. Although in his initial filing in this will contest he had contended his father, suffering from "parkinsonism and dementia," had become incompetent

more than a year before, Donavin Grenz apparently saw no problem with his father's ability to execute this new document.

[¶42] Sally Grenz did not testify during the hearing. She would die July 31, 2019, at age 81.

[¶43] Seven months after the hearing, February 6, 2018, the court issued its memorandum opinion and order. It found undue influence. The court wrote, "If Leo's Will is probated as it is *currently written*, Sally, and eventually Kelly and Kelly's wife Kelley, end up with all of Leo's shares of JT Ranch and Donavin and David receive nothing." The court then directed the rewriting of the will in the manner that will be described in detail below.

[¶44] The contestants promptly filed the proposed judgment. The judgment was entered on February 16, 2018.

B

[¶45] There is nothing ambiguous about Leo Grenz's will as written and signed by him. He died first and his wife of more than 40 years, Sally Grenz, inherited his entire estate. Everything to a surviving spouse is probably the most common will provision in the state.

[¶46] Under the will as rewritten by the court, Donavin and David Grenz received more than $4.5 million, and the surviving spouse received approximately $250,000.

[¶47] Apparently, never before has this Court struck down or upheld the striking down of a bequest to a surviving spouse on the grounds of undue influence.

[¶48] North Dakota has by code defined undue influence since statehood, now codified as N.D.C.C. § 9-03-11:

> Undue influence defined. Undue influence consists:
> 1.    In the use, by one in whom a confidence is reposed by another or who holds a real or apparent authority over that

11

person, of such confidence or authority for the purpose of obtaining an unfair advantage over that person;

2. In taking an unfair advantage of another's weakness of mind; or

3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

The meaning applies throughout our law. N.D.C.C. § 1-01-09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears.").

[¶49] "The law does not condemn all influence, only undue influence." *Matter of Estate of Wagner*, 265 N.W.2d 459, 464 (N.D. 1978). "A mere suspicion of undue influence is not sufficient to require submission of the question of undue influence to the jury or to sustain a verdict." *Id.* at 465; *In re Burris' Estate*, 72 N.W.2d 884, 889 (N.D. 1955); *Kronebusch v. Lettenmaier*, 311 N.W.2d 32, 35 (N.D. 1981).

[¶50] We have rejected the argument that whenever a confidential relationship exists between a party and the testator, coupled with the same party participating in the preparation of the will and receiving a benefit by its terms, a presumption of undue influence arises. *Matter of Estate of Polda*, 349 N.W.2d 11, 15 (N.D. 1984) (quoting *Matter of Estate of Thomas*, 290 N.W.2d 223, 227 (N.D. 1980)).

[¶51] We have long recognized the concept of "the natural objects of his bounty" as relating to family members, *see Black v. Smith*, 58 N.D. 109, 224 N.W. 915, 921 (1929). Other Uniform Probate Code states have expounded on the importance of this principal. "A failure to show an unnatural disposition defeats a claim of undue influence. . . . Courts have consistently found that it is not unnatural to dispose of property to family members with whom one maintains a close relationship." *M.S. v. M.L.*, 89 Mass. App. Ct. 1126 (2016). Our neighboring Uniform Probate Code State of Montana has said:

"To establish undue influence, a party must present specific acts showing that undue influence actually was exercised upon the

mind of the testator directly to procure the execution of the will." A trier of fact should consider "the opportunity for undue influence, including the testator's susceptibility to influence, and whether the disposition of property was natural." The mere "opportunity to exercise undue influence on the testator is not sufficient to prove undue influence and invalidate a will. Rather, the opportunity to exercise undue influence is to be considered and correlated with the alleged acts of influence to determine if the acts amount to undue influence."

*Matter of Estate of Edwards*, 2017 MT 93, ¶ 56, 387 Mont. 274, 393 P.3d 639 (internal citations omitted).

[¶52] This court has cautioned against seeking evidence of a testator's "real intent" from outside the will:

> Where the language of a will is clear and unambiguous, the intent of the decedent must be determined from the language of the will itself. *Jordan v. Anderson*, 421 N.W.2d 816, 818 (N.D. 1988). Unless a duly executed will is ambiguous, the testamentary intent is derived from the will itself, not from extrinsic evidence. *Matter of Estate of Ostby*, 479 N.W.2d 866, 871 (N.D. 1992). Once it is shown that the will was properly executed, "the executed will *is* the decedent's testamentary intent." *Id.* The purpose of drafting and executing an unambiguous will is to give it legal effect upon death. *Matter of Estate of Duemeland*, 528 N.W.2d 369, 371 (N.D. 1995). A contrary holding would leave every will open to attack as to the testator's alleged "real" intent, and would deprive decedents of any certainty about the eventual disposition of their estates. *Id.*

*Matter of Estate of Brown*, 1997 ND 11, ¶ 16, 559 N.W.2d 818.

[¶53] Because the correct application of the law on partial invalidity of a will yields a result acceptable to the personal representative and also presumably because of the normally difficult clearly erroneous standard of review on a finding of undue influence, he has not challenged the finding, even though it appears to be based on circumstance and suspicion.

II

[¶54] The district court wrongly rewrote the will.

13

[¶55] The Leo Grenz will provides:

> ARTICLE FIVE. <u>RESIDUE</u>.
> A.    <u>Surviving Spouse</u>.  I give and devise all of the rest, residue and remainder of my property of every kind and description, wherever situated and whether acquired before or after the execution of this Will, to my spouse, Sally Grenz, if she shall survive me.
> B.    <u>Children</u>.  In the event that my spouse does not survive me, I make the following bequests:
>     (1)    I give and devise an undivided one-third of my stock in JT Ranch, Inc., to each of my sons, namely, Donavin Grenz, David Grenz and Kelly Grenz.
>     (2)    I give and devise to my daughter, Leatta Horner, the sum of $10,000.00.
>     (3)    I give and devise all of the rest, residue and remainder of my property of every kind and description, wherever situated and whether acquired before or after the execution of this Will, to my son and daughter-in-law, Kelly Grenz and Kelley Grenz, in equal shares.

Under Leo Grenz's will, the JT Ranch transfers under Five (A). With the transfer under Five (A) invalidated, there is no other portion of the will that transfers the property. Five (B) by its explicit language applies only if his spouse did not survive him, and his spouse did survive him. The Uniform Probate Code as adopted by North Dakota, N.D.C.C. § 30.1-04-01(1), provides, "Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this title." With the invalidity of the transfer of the ranch under the will, it is not effectively disposed of by will and it passes by intestate succession.

[¶56] Citing no authority at all to do so, the district court said it rewrote the will to provide:

> ARTICLE FIVE. <u>RESIDUE</u>.
> A    (1)    I give and devise ~~an undivided one-third of~~ my stock in JT Ranch, Inc., to ~~each of my sons, namely,~~ Donavin Grenz [and] David Grenz ~~and Kelly Grenz~~.
>     (2)    <u>Surviving Spouse</u>. I give and devise all of the rest, residue and remainder of my property of every kind

14

and description, wherever situated and whether acquired before or after the execution of this Will, to my spouse, Sally Grenz, if she shall survive me.

B. <u>Children</u>: In the event that my spouse does not survive me, I make the following bequests:

(1) I give and devise to my daughter, Leatta Horner, the sum of $10,000.00.

(2) I give and devise all of the rest, residue and remainder of my property of every kind and description, wherever situated and whether acquired before or after the execution of this Will, to my son and daughter-in-law, Kelly Grenz and Kelley Grenz, in equal shares.

Not only did the district court make the contingent grant of the ranch the primary grant, it changed the terms of the clause that would have become effective had the contingency arisen by striking Kelly Grenz from that grant.

A

[¶57] The contestants, after having acknowledged in their proposed judgment that the district court rewrote the will, on appeal boldly assert: "The district court did not re-write the Will."

[¶58] In a footnote, the contestants mention two cases relating to the power of the district court regarding probate. *Matter of Estate of Peterson*, 1997 ND 48, ¶¶ 14-16, 561 N.W.2d 618; *Matter of Estate of Johnson*, 501 N.W.2d 342, 346 (N.D. 1993). Both cases relate to poorly drafted wills. In *Peterson*, the district court and this Court applied the statute: "The intention of a testator as expressed in the testator's will controls the legal effect of the testator's dispositions." N.D.C.C. § 30.1-09-03. In *Johnson*, the courts had to determine the intent of language in the will that was ambiguous and capable of disparate meanings. Neither case is helpful to the contestants.

[¶59] The contestants mention that Kelly Grenz cannot benefit from his wrongdoing to justify rewriting the will to exclude Kelly Grenz from receiving ranch shares. The principal is not one of substantive law but one related to competing reasonable interpretations and is codified and limited by statute, N.D.C.C. § 31-11-05:

> The maxims of jurisprudence set forth in this section are not intended to qualify any of the provisions of the laws of this state, but to aid in their just application:
>
> . . . .
>
> 8. A person cannot take advantage of that person's own wrong.
>
> . . . .

So this maxim does not alter an unambiguous statute, nor does it create any new provision of the probate code.

B

[¶60] The majority fails to acknowledge the district court said it rewrote the will. It obscures what the district court did, saying "the court gave effect to part of the contingent distribution clause that devised the JT Ranch shares to Donavin Grenz and David Grenz." There are at least three problems with this assertion.

[¶61] First, that is not what the district court said it did. The district court says it rewrote the will: "The will is rewritten as follows . . . ."

[¶62] Second, if the provision in the will leaving the ranch shares to the wife is invalidated, the contingency clause by its terms is not activated because it was predicated on the wife's not surviving, but the wife survived.

[¶63] Third, the contingency clause it says was "given effect" was not followed by the district court. The contingency clause in Leo Grenz's will would have left the ranch shares to all three sons equally, but the "contingency clause" in the district court's will left the property only to Donavin and David Grenz.

[¶64] The majority says there is no problem with what the district court did because it just rearranged words, sentences, and beneficiaries already there, and renumbered things. Under this rationale, if a will says, "I leave *everything* to A and *nothing* to B," the will would not have been rewritten if the court had rearranged the words to say, "I leave *nothing* to A and *everything* to B."

[¶65] Here is another example. Testator's will says, "I leave $1 million to my spouse and $1,000 to Charity X." Charity X, a beneficiary under the will, challenges the will, saying it was the result of undue influence by the spouse; after all, the testator had over the years told representatives of the charity and some others that he was going to leave the charity $1 million. Further, in later years the testator had not accepted invitations to the charity's events (and no doubt that was the spouse's fault). In declining health and having never written a will before, the testator accompanied by the spouse visited a lawyer and had the will prepared. The district court agrees with the charity and says it is rearranging the words so the will reads, "I leave $1,000 to my spouse and $1 million to Charity X." The majority would say the will has not been rewritten.

[¶66] Section 30.1-04-01(1), N.D.C.C., says any "part of a decedent's estate not effectively disposed of by will passes by intestate succession." The will that must effectively dispose of the property is the will of the decedent, Leo Grenz here, not the will of the district judge. The Uniform Law Commission in drafting the Uniform Probate Code or the Legislative Assembly in its enactment in North Dakota could have provided something different than it did for cases where a will failed to effectively distribute property because of a finding of undue influence. They could have said in such cases a prior will would be resurrected, if there were one. Or they could have said in such cases the court may devise the property as it thinks the decedent would have if there was no undue influence. But they did not do so.

[¶67] The majority opinion looks to the non-Uniform Probate Code state of Missouri and a 29-year-old lower court opinion never adopted by that state's supreme court, *Mundwiller v. Mundwiller*, 822 S.W.2d 863, 866 (Mo. Ct. App. 1991), to argue that a finding of undue influence is "analogous" to felony murder. It notes that North Dakota has a felony murder inheritance disqualification statute. The problems here are legion. The district court did not use or even suggest it was considering such a rationale. The UPC drafting could have made such a provision but did not. The standard of proof required for felony murder is much greater, beyond a reasonable doubt. The concept opens the door for courts in the future to completely disinherit spouses.

17

[¶68] The majority argues there is "a strong presumption" that testators do not intend for any of their estate to pass by intestacy, citing *Estate of Klein*, 434 N.W.2d 560, 562 (N.D. 1989). The majority ignores that this is a principal for courts to interpret ambiguous wills, not to write new ones.

[¶69] The majority seems to suggest that a court can ignore statutes and can ignore plain words in the name of "equity." It cites *Estate of Albrecht*, 2018 ND 67, ¶ 23, 908 N.W.2d 135, a case dealing with the intersection of divorce law and probate law, and potential equitable remedies under the divorce. The district court is specifically vested with broad equitable powers under the divorce laws, *see, e.g.*, N.D.C.C. § 14-05-24, including the authority to "redistribute property and debts." The district court is given no such equitable powers under the Uniform Probate Code to rewrite wills or to redistribute property and debts. As the majority concedes in another context, "equity follows the letter and the spirit of the law and courts of equity are bound by and must follow and apply the principles of substantive law." *Schwarting v. Schwarting*, 354 N.W.2d 706, 708 (N.D. 1984). *See also Estate of Voeller*, 534 N.W.2d 24, 26 (N.D. 1995) ("an equitable remedy cannot avoid the meaning of an unambiguous statute"). The substantive law here is that if any part of the decedent's estate is not effectively disposed of by the decedent's will, it passes to the decedent's heirs by intestate succession. N.D.C.C. § 30.1-04-01(1).

[¶70] Even without N.D.C.C. § 30.1-04-01(1) being dispositive, the authorities are in agreement as to the effect of undue influence on a will.

> If undue influence has been exerted as to some of the gifts in the will, and there is no residuary clause, the gifts as to which the undue influence was exerted are invalid; and the property which was attempted to give by such invalid gifts will pass as in intestacy.
> If undue influence has been exerted as to the residuary clause only, the residuary clause is invalid but the other gifts are valid; and the residue will be distributed as in intestacy.

Jeffrey A. Schoenblum*, Page on the Law of Wills* § 15.12 (2003) (footnotes omitted).

## III

[¶71] I would reverse and remand for the district court to distribute the shares of JT Ranch under the laws of intestacy.

[¶72] Dale V. Sandstrom, S.J.